WALDEN, Judge.
This is an appeal brought by a plaintiff from an order denying his motion for summary judgment and granting the defendant’s motion for summary judgment. We affirm.
Plaintiff is a lawyer. He was employed by defendant, John Miskoff, and one, P. L. Watson, on behalf of Mr. Watson’s sister, A. V. Abbott, to obtain a declaratory decree as to the rights of stockholders in D. D. S. Corporation. The stated object of the litigation was to obtain a judicial declaration that defendant, Mrs. Abbott, and the Estate of Thurman Whiteside, each have one-third of the authorized capital stock of D. D. S. Corporation and to obtain an accounting between these stockholders as to monies due to them by the corporation.
It was agreed in the letter form contract that the fee would be $10,000.00, of which $2,500.00 would be paid in cash, and the balance “only out of and from monies re *203 ceived by D. D. S. Corporation, or its stockholders, from or out of the lands involved in the litigation.”
It was further specifically provided, “You [meaning plaintiff] are hereby granted a lien upon the stock of Mrs. Abbott and Miskoff [meaning the defendant] in said corporation for the payment of the $7,500.00 when due.”
With this background, plaintiff sued the defendant, Miskoff, for his attorney fee. His complaint was lengthy and detailed showing the acquisition by D. D. S. Corporation of certain farm machinery and a tract of 5360 acres of land for a purchase price in excess of $180,000.00. It revealed that defendant, one T. A. Whiteside and A. V. Abbott owned all of the corporation’s stock, with each owning one-third. It alleged the death of T. A. Whiteside and the filing of the suit by plaintiff for the defendant and Mrs. Abbott against the corporation and the administrator of the Whiteside Estate in accordance with the above employment agreement. Plaintiff says that his obligations and services were completely performed under the agreement. He then details a series of property transfers wherein the defendant acquired title to a number of tracts of land which had belonged to the corporation. He plead the corporation had received in cash through sale of the real estate a sum in excess of $408,000.00. We now reproduce the gravamen of plaintiff’s complaint, which is critical to our evaluation of this appeal:
“28. As will appear from said employment contract * * * the defendant and said P. L. Watson agreed to pay to plaintiff * * * the sum of $10,-000.00 as attorneys’ fees, $2,500.00 of which was to be paid in cash, as a retainer fee, and the balance of $7,500.00 was to be paid out of monies received by D.D.S. Corp., or its stockholders, from and out of the lands of said corporation, when sold. The said P. L. Watson, on behalf of his sister, A. V. Abbott, has paid and settled in full for his one-half of the said $10,000.00 fee. The defendant paid $1,000.00 on or about the time said contract was first drawn, and has paid no other sum whatsoever upon said contract. * * *
“29. Because of the allegations in this amended complaint, the plaintiff is entitled to an equitable lien on the said lands owned by the defendant, as aforesaid, as security for the sum of $4,000.00, with interest thereon from February 20, 1963, as provided by law.

"PRAYERS

“WHEREFORE, the plaintiff prays the Court as follows :
“1. That it will grant an equitable lien to the plaintiff upon- the said lands so owned by the defendant,' as alleged in this amended complaint.
“2. That it will order the defendant to pay plaintiff the amount due plaintiff under said employment contract, with interest as provided by law, within a short day to be fixed by the Court, and that in default of such payment, as ordered by the Court, the said lands be sold to satisfy the said equitable lien.”
The defendant’s answer was multifaceted and we mention only that which treats the appellate issue. He defended:
“2. That the contract sued upon was a joint undertaking by this defendant and one P. L. Watson; and that prior to the commencement of this action, plaintiff settled his claim on the contract here sued upon with one of the joint obligors, P. L. Watson, and thereby settled and discharged the entire agreement and any liability of both P. L. Watson and this defendant under such agreement.
**'****
“6. That plaintiff, if he is entitled to recover at all, has an adequate remedy at law in that this defendant is solvent and responsive to a judgment for the full amount of plaintiff’s claim.”
*204 It is not disputed that plaintiff had earlier released A. V. Abbott from her obligation for attorney’s fees created by the contract by accepting $2,500.00 in settlement. It is not disputed that the case was ripe and ready for disposition by summary judgment.
In making the dispositive ruling the trial court cited Feiner’s Organization v. Caf-fina, Fla.1955, 77 So.2d 852. This ruling was buttressed with the court’s comment in its order denying plaintiff’s petition for rehearing, as follows:
“Plaintiff contends in effect that defendant, through various machinations to avoid payment of attorney’s fees owed to plaintiff, became unjustly enriched. Assuming this to be true, ar-guendo, it still must be recognized that defendant’s liability for the lien sought is dependent upon his liability for the contractual debt secured by the lien. Defendant’s alleged rascality and evil intention to escape from his just obligations do not operate to render him liable or, more properly, cause him to remain liable, for a debt from which he became legally discharged through act of the plaintiff.”
From the foregoing the essential question is discerned. Did plaintiff’s release of A. V. Abbott from her obligation under the contract operate as a matter of law to release defendant from his obligation under the agreement to pay plaintiff’s legal fees? We answer this question in the affirmative.
In the Feiner’s case, supra, plaintiff, a broker, was contacted by X, who promised to pay plaintiff $150,000 if plaintiff could find a purchaser for X’s stock. Plaintiff did sell the stock for X to Y, with Y orally guaranteeing that plaintiff would receive his broker’s commission when the deal was complete. Subsequently, plaintiff released Y. Plaintiff’s cause of action was brought in the alternative, — in tort on the basis that defendants unlawfully conspired to defraud plaintiff of his money, and in contract for breach of contract.
The Supreme Court held:
1. No recovery on the tort theory, — the release of one joint tortfeasor releases the rest.
2. “If it was a contract whereby both buyers and sellers became primarily jointly liable to the plaintiff for the full amount of the commission, the release would bar the present claim absolutely, under the familiar principle, adhered to by the great majority of the courts, that a release of one joint contract obligor releases all.”
3. However, if Y was merely a guarantor, the release of one secondarily liable to a contract does not release the party primarily liable.
It is reflected in plaintiff’s complaint and there is no dispute, nor can there be, that plaintiff’s services were to be rendered and he was to be paid therefor by virtue of contract. This is the rock, or focal point, of the whole transaction. Thus, when plaintiff settled with one of the primary obligors, it served to release the other primary obligor under the No. 2 principle referred to in the Feiner’s case.
But what is plaintiff’s position? As reflected, he is suing on the contract, but seeking equitable relief by the imposition of a lien upon defendant’s lands “as security” for the payment of his attorney fees. In his brief plaintiff claims that his suit is in tort upon the theory “that [defendant] had unjustly enriched himself, by converting to his own use funds held by him under a constructive trust for the use and benefit of [plaintiff] by using such funds in the acquisition of said lands for himself.” Assuming that plaintiff’s allegations are true, what difference does it or could it possibly make to plaintiff if the claimed “security” for the payment of his fees is eliminated by the defendant, when *205 the primary debt or underlying obligation, has been cancelled by plaintiff’s act in releasing the other joint obligor. In other words, there has to be a debt before you can pursue a security or impose a lien.
To pass quickly over other defects in plaintiff’s position, he nowhere pleads or suggests that a legal remedy such as a simple suit for breach of contract would not afford him adequate and complete relief. This is important and necessary as a condition to equitable proceedings as it protects the right to jury trial. See 12 Fla.Jur., Equity, § 20, et seq.
Even assuming the existence of a debt, plaintiff does not excuse nor explain his failure to pursue the specific security device provided in the contract — a lien upon the stock.
Finally, we do not construe the contract as does plaintiff to the effect that the provision that the fees were to be paid out of monies received from or out of the lands involved in the litigation constituted a security mechanism for the payment of his fees. A specific provision such as the stock lien provision will normally be construed as eliminating the unspoken, the general, and the unclear. See 17 Am.Jur.2d, Contracts, § 270. We believe that this provision was intended to toll the time for payment, that is to say, plaintiff could not claim payment until the lands produced the money.
Even assuming the continuance of the debt and that the cause of action sounds in tort, all as claimed by plaintiff, his suit still fails under the first principle outlined above in the Feiner’s case, supra. And it is not saved by the terms of Section 768.041, F.S.1967, F.S.A.[1].
The clear wording of this statute, at least as we read it, makes it inapplicable to the instant situation because this suit is not “for property damage to, personal injury of, or the wrongful death of any person * * * ”
Finally, any contention that the Feiner’s case is inapplicable because neither defendant nor Abbott were obligors for plaintiff’s fees under the contract because the contract provided that the attorney fees were solely a charge upon the land or the land proceeds is not tenable. Such theory is inconsistent and repugnant to these considerations, some of which have been already mentioned: (a) the contract specifically provided that plaintiff was to have a lien upon defendant’s corporate stock for the balance of the fees when due; (b) the retainer was paid by defendant and Abbott personally; (c) plaintiff’s complaint alleges that defendant and Watson, for Abbott, agreed to pay the fees; (d) plaintiff’s prayer is for defendant to be ordered to pay plaintiff; (e) settlement with Abbott does not appear to have been made from the land or land proceeds. Plaintiff alleges that “the said P. L. Watson, on behalf of his sister, A. V. Abbott, has paid and settled in full for his one-half of the said $10,000.00 fee. The defendant paid $1,000.00 on or about the time said contract was first drawn, and has paid no other sum whatsoever upon said contract.” (f) the equitable lien effort is referred to as security; (g) the court’s reading and interpretation of the contract as a whole reveals as a matter of law that the parties intended to contractually obligate defendant jointly with Abbott to pay plaintiff’s attorney fees with the sole security therefor being a lien upon defendant’s corporate stock.
Although plaintiff has valiantly and imaginatively attempted to escape the effect of his settlement with one of the joint obligors and the declaration of the *206 Feiner’s case, supra, we are bound to say that the trial court correctly disposed of this litigation.
Affirmed.
CROSS, C. J., and OWEN, J., concur.

. 768.041(1) “A release or covenant not to sue as to one (1) tort-feasor for property damage to, personal injury of, or the wrongful death of any person shall not operate to release or discharge the liability of any other tort-feasor who may be liable for the same tort or death.”