In re **JUSTICE OAKS II, LTD.**
**Chapter 11, Debtor.**

Bruce **WALLIS,** Kate **Wallis,**
**Plaintiffs–Appellants,**

v.

**JUSTICE OAKS II, LTD.,**
**Defendant–Appellee.**

No. 89–3016.

United States Court of Appeals,
Eleventh Circuit.

April 25, 1990.

S. Thomas Padgett, Keego Harbor, Mich., for plaintiffs-appellants.

Shirley Arcuri, Tampa, Fla., George L. Cass, Pittsburg, Pa., for defendant-appellee.

Before TJOFLAT, Chief Judge, HATCHETT, Circuit Judge, and MORGAN, Senior Circuit Judge.

TJOFLAT, Chief Judge:

Bruce and Kate Wallis (the Wallises) appeal the district court's order affirming three separate orders entered by the bankruptcy court in *In re Justice Oaks II, Ltd.,* No. 86–1976–8P1, a reorganization of Justice Oaks II, Ltd. (Justice Oaks) under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101–1174 (1988). The three bankruptcy court orders were consolidated for the purpose of appeal to the district court. The district court affirmed the bankruptcy court orders on the ground of res judicata, holding that the Wallises' claims were barred by prior orders of the bankruptcy court. We disagree, in part, with the district court's reasoning but nevertheless affirm the district court and, by operation of law, the bankruptcy court.

### I.

Justice Oaks, a limited partnership, owned a large residential development in Sarasota County, Florida. When the development failed, Justice Oaks filed, on May 15, 1986, a petition for reorganization under chapter 11. At that time, Justice Oaks had four potential major creditors:

1. *South Florida Savings Bank (South Florida).* South Florida held a first mortgage on all of Justice Oaks' property, with the exception of a guest house and an administration building in the development. The mortgage was South Florida's security for a $27 million loan to Justice Oaks.

2. *Allegheny Oaks of Florida, Inc. (Allegheny).* Allegheny, a former general partner of Justice Oaks, held a mortgage second in priority to South Florida's first mortgage on the majority of Justice Oaks' property. The second mortgage was Allegheny's security for Justice Oaks' promissory note to Allegheny in the amount of $7,334,746.

3. *Park Bank of Florida (Park Bank)/FDIC.* Park Bank, now succeeded by the FDIC, held a mortgage on the guest house and administration building as security for its loan to Justice Oaks in the amount of $4,500,000.

4. *Bruce and Kate Wallis.* The Wallises personally guaranteed Park Bank's loan to Justice Oaks, but the Wallises' liability on that guarantee appears to have been limited to $3,000,000.

On November 11, 1986, the Wallises filed a proof of claim asserting that, on the basis of their personal guarantee of the Park Bank loan, Justice Oaks "was at the time of the filing of the Petition initiating this case, and still is, contingently indebted to this Claimant in the sum of $4,500,000 plus interest." Significantly, neither Park Bank nor its successor, the FDIC, has foreclosed on the mortgage; therefore, the Wallises were not then, and are not now, indebted to Park Bank or the FDIC on the guarantee.

After several creditors had filed proofs of claims, Justice Oaks, Justice, Inc. (Justice) (Justice Oaks' parent corporation), Allegheny, and South Florida entered into negotiations to settle the various claims against Justice Oaks. The parties agreed that Justice Oaks would sell its property, with the exception of the guest house and administration building, to Arvida Disney Corporation for $25.7 million; $3.7 million would be paid at closing, and the remainder would be paid under a six-year purchase-money note. Arvida would also secure its obligation to Justice Oaks with a first mortgage on all of the property. Upon closing, Justice Oaks would apply the $3.7 million cash proceeds as follows:

1. $1,000,000 to Allegheny in full satisfaction of Justice Oaks' promissory note to Allegheny;

2. $25,000 for tax liabilities;

3. $50,000 for administrative expenses;

4. $100,000 to all unsecured creditors; and

5. the remainder to South Florida.

Furthermore, Justice Oaks would deliver Arvida's promissory note and mortgage to South Florida, and, in exchange for the cash, note, and mortgage, South Florida would release Justice Oaks from its debt to South Florida. Thus, Arvida would receive the Justice Oaks property free and clear of all liens.

On December 3, 1986, Justice Oaks moved the bankruptcy court to hold an expedited hearing on the proposed sale to Arvida, shorten notice, and approve the sale. The next day, the court granted the motion to shorten notice and scheduled the hearing for December 12. The Wallises received notice of this order. On December 8, Justice Oaks moved the court to authorize settlement of the claims, as outlined above, and requested that the hearing on this matter be held on December 12 as well. The hearing took place on December 12, and the court granted the motion to sell the property to Arvida free and clear of all liens and authorized the parties to settle the claims as discussed above. Apparently, the Wallises did not appear at this hearing but received notice of the court's orders.

On January 20, 1987, Justice Oaks filed an amended proposed plan of reorganization (plan), which essentially restated the settlement agreement. The plan set out various classes of creditors and proposed the following disposition of funds:

1. South Florida to receive cash, note, and mortgage from sale of property to Arvida;

2. Allegheny to receive $1,000,000;

3. FDIC, as successor to Park Bank, to receive the guest house and administration building free and clear of all liens; and

4. all contingent creditors, including the Wallises, to receive nothing.

South Florida, Allegheny, and the FDIC were classified as secured creditors, while the Wallises were listed as unsecured creditors.

On May 15, 1987, after receiving notice of the plan, the Wallises filed (1) a clarified proof of claim, which stated that the claim was not contingent, and (2) an objection to confirmation of the plan. In their objection to confirmation, the Wallises asserted that Rodney Propps, a general partner of Justice Oaks, made several fraudulent misrepresentations in order to convince them to guarantee the Park Bank loan. The Wallises alleged that these misrepresentations were part of a scheme involving Propps, Justice Oaks, Allegheny, and South Florida that was designed to raise sufficient funds to buy out Allegheny's partnership interest in Justice Oaks. Thus, the Wallises argued that the plan was not fair or equitable since it proposed large payments to Allegheny and South Florida while leaving the Wallises liable for any deficiency resulting from the FDIC's sale of the guest house and administration building.

On May 15, 1987, the Wallises filed in the bankruptcy court an adversary complaint against Justice Oaks, South Florida, and Allegheny. The Wallises filed an amended complaint on June 8, 1987 against the same parties. The amended complaint essentially restated the factual allegations contained in the Wallises' objection to confirmation but requested two different remedies. First, it asked the court to declare an equitable lien in favor of the Wallises on the proceeds from the sale to Arvida "in the amount equal to [the Wallises'] liability on the guaranties." Second, it requested the court equitably to subordinate, under 11 U.S.C. § 510, Allegheny's and South Florida's claims to the Wallises' own claim.

On June 15, 1987, Allegheny filed a motion to dismiss the Wallises' adversary complaint. Allegheny argued, *inter alia*, that, because the Wallises had not been required to pay anything on their guarantee of the Park Bank loan, they had no claim and therefore could not request subordination or an equitable lien. On the same day, the bankruptcy court overruled the Wallises' objection to confirmation of the plan. The court held that its order authorizing Justice Oaks to settle Allegheny's and South Florida's claims established the law of the case and that the Wallises, who had not objected to the proposed settlement, could not object

to the plan, which was essentially a restatement of the settlement agreement. The court then confirmed the plan, and the Wallises filed an appeal in the district court. The district court dismissed the appeal because the Wallises failed to file their notice of appeal within ten days of entry of judgment. *See* Bankr.R. 8002(a) & advisory committee note.

On July 3, 1987, the Wallises moved the bankruptcy court to maintain in escrow the cash proceeds from the sale of Justice Oaks' property to Arvida. The Wallises argued that it would be improper to allow those funds to be disbursed to Allegheny and South Florida while the adversary proceeding against those parties was pending. On July 31, 1987, the court denied this motion, and the Wallises again appealed to the district court. Shortly after the bankruptcy court denied this motion, the Wallises dismissed South Florida from the adversary proceeding and dropped their objection to disbursement of funds to South Florida.

For the next several months, the Wallises filed numerous motions for rehearing and reconsideration, appeals, and motions to stay payment to Allegheny pending resolution of the other motions and appeals. Finally, on February 4, 1988, the bankruptcy court established February 19, 1988, as the last day on which a creditor or interested party could object to a previously filed claim. Not surprisingly, on February 16, the Wallises filed an objection to Allegheny's claim and, on February 24, filed an amended objection. The Wallises, relying on essentially the same factual allegations as contained in the adversary complaint and objection to confirmation, argued that Allegheny's claim arose out of the redemption of its partnership interest in Justice Oaks and therefore represented a return on investment rather than a secured claim. On March 10, 1988, the bankruptcy court dismissed the Wallises' adversary proceeding. The court reasoned that all of the

issues raised in the complaint had been considered by the court when it authorized settlement and confirmed the plan. And on May 12, 1988, the bankruptcy court overruled the Wallises' objection to Allegheny's claim, holding again that the allowance of Allegheny's claim had been finally determined in the court's orders authorizing settlement and confirming the plan. In both the proposed settlement and the proposed plan, Allegheny's claim was treated as a secured creditor's claim. Apparently, the court considered the Wallises' objection and adversary complaint to be barred by the law of the case. The Wallises appealed these orders to the district court.

On appeal to the district court, three of the bankruptcy court's orders were consolidated: (1) the order dismissing the Wallises' adversary complaint, (2) the order denying the Wallises' motion to require maintenance of funds in escrow, and (3) the order overruling the Wallises' objection to Allegheny's claim. The district court agreed with the bankruptcy court on all counts. According to the district court, the Wallises should have objected to the motion to approve the proposed settlement and should have appealed the bankruptcy court's order authorizing settlement. Their failure to do so resulted in a final judgment that barred their later attempts to pursue their claims. Thus, the court affirmed all three orders on the ground of res judicata. The Wallises appeal, and we affirm.[1] We address each order in turn, beginning with the order dismissing the Wallises' adversary complaint.

## II.

As we note above, both the bankruptcy and district courts held that former adjudication barred litigation of the Wallises' adversary proceeding against Allegheny. The courts gave preclusive effect to the bankruptcy court's (1) order authorizing settlement and (2) order confirming the

---

**1.** Holding a claim to be barred from relitigation on the ground of res judicata is a determination of law. "This [c]ourt's standard of review with regard to determinations of law, whether made by the bankruptcy court or by the district court, is *de novo.*" *Equitable Life Assurance Soc'y v. Sublett (In re Sublett),* 895 F.2d 1381, 1383 (11th Cir.1990). We therefore review the district court's judgment and the three bankruptcy court orders *de novo.*

plan. We analyze both orders in turn to determine their preclusive effect.

### A.

■■■ We need not tarry over the bankruptcy court's order authorizing settlement since that order does not constitute a final decision on the merits. A court's order or judgment can never have any preclusive effect [2] on future litigation unless that order or judgment constitutes a final decision on the merits. *See Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970); *United States v. United States Smelting Refining & Mining Co.*, 339 U.S. 186, 198, 70 S.Ct. 537, 544, 94 L.Ed. 750 (1950); *Jones v. Texas Tech Univ.*, 656 F.2d 1137, 1141 (5th Cir. Unit A Sept. 1981).

■■■ When a bankruptcy court decides whether to approve or disapprove a proposed settlement, it must consider:

(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir.) (quoting *In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d 1128, 1135 (8th Cir.1984), *cert. denied*, 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985)), *cert. denied*, 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed.2d 122 (1986).

When the bankruptcy court below approved the settlement agreement between Justice Oaks, Justice, South Florida, and Allegheny, the court was required to determine only the probability of success should South Florida's and Allegheny's claims be litigated, the difficulty of collecting on those claims, the expense of litigation, and the other creditors' interests. In making these determinations, the court had to consider many factors other than the merits of South Florida's and Allegheny's claims. The court, moreover, never had to *decide* the merits of those claims—only the *probability* of succeeding on those claims. Such a determination is much like that required of a court before it may grant a preliminary injunction. *See Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184, 1188 (5th Cir.1979). And the Supreme Court has held an order granting a preliminary injunction not to be a final judgment on the merits. *See United States Smelting*, 339 U.S. at 198–99, 70 S.Ct. at 544. Similarly, we think that a bankruptcy court's order authorizing settlement of a claim cannot constitute a final judgment on the merits for purposes of former adjudication. Therefore, the bankruptcy court's order authorizing settlement of South Florida's and Allegheny's claims cannot be given preclusive effect as a final judgment on the merits.

### B.

While the court's order authorizing settlement cannot be given preclusive effect, we conclude that the order confirming the plan does satisfy the requirements of a judgment that can be given such effect. Furthermore, we hold that the doctrine of "claim preclusion" [3] applies to bar litigation

---

2. *See infra* note 3 (describing the different types of preclusive effect a judgment can have).

3. In this opinion, we use the term "claim preclusion," while the bankruptcy court, in its order, cited the "law of the case" as its basis for holding the Wallises' arguments to be barred. The district court, however, framed its opinion in terms of "res judicata." For the sake of clarity, we take this opportunity to define these often misused terms.

   Res judicata is frequently used to refer generically to the law of former adjudication. A former judgment can create two different types of bars to subsequent litigation, depending on whether the subsequent litigation arises from the same or a different cause of action. If the later litigation arises from the same cause of action, then the judgment bars litigation not only of "every matter which was actually offered and received to sustain the demand, but also [of] every [claim] which might have been presented." *Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 319, 47 S.Ct. 600, 602, 71 L.Ed. 1069 (1927). In this opinion, we refer to this strand of former adjudication as "claim preclusion." *See Jones v. Texas Tech Univ.*, 656 F.2d 1137, 1141 n. 1 (5th Cir. Unit A Sept. 1981). If,

of the claims made in the Wallises' adversary complaint.

### 1.

■ Claim preclusion applies to an order or judgment when four conditions are satisfied. First, the prior judgment must be valid in that it was rendered by a court of competent jurisdiction and in accordance with the requirements of due process. *See Windsor v. McVeigh*, 93 U.S. 274, 277–78, 23 L.Ed. 914 (1876); *Jones*, 656 F.2d at 1141; *United States v. Hartley*, 612 F.2d 1009, 1010 (5th Cir.1980). Second, the judgment must be final and on the merits. *See United States Smelting*, 339 U.S. at 198, 70 S.Ct. at 544; *Jones*, 656 F.2d at 1141. Third, there must be identity of both parties or their privies. *See Jones*, 656 F.2d at 1141. Fourth, the later proceeding must involve the same cause of action as involved in the earlier proceeding. *See Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 319, 47 S.Ct. 600, 602, 71 L.Ed. 1069 (1927); *Jones*, 656 F.2d at 1141.

■ In this case, all four requirements are satisfied by the order confirming the plan and the adversary proceeding at issue. First, the order confirming the plan was entered by a court of competent jurisdiction and in accordance with due process. No challenge to the bankruptcy court's jurisdiction over confirmation of the plan has been, or could be, asserted. Furthermore, it appears that the court complied with the procedural requirements of the bankruptcy rules by giving adequate notice of the hearing on confirmation and by properly conducting that hearing. *See* Bankr.R. 3020(b).

Second, the order constitutes a final judgment on the merits. This issue has been settled for some time: a bankruptcy court's order confirming a plan of reorganization is given the same effect as any district court's final judgment on the merits. *See Stoll v. Gottlieb*, 305 U.S. 165, 170–71, 59 S.Ct. 134, 137, 83 L.Ed. 104 (1938); *Miller v. Meinhard–Commercial Corp.*, 462 F.2d 358, 360 (5th Cir.1972).[4]

Third, all of the parties to the adversary proceeding were parties to the confirmation proceeding, and the parties against whom the prior order is asserted (the Wallises) had a full and fair opportunity to raise their objection. A party, for the purposes of former adjudication, includes "all who are directly interested in the subject matter and who have a right to make defense,

---

however, the subsequent litigation arises from a different cause of action, the prior judgment bars litigation only of "those matters or issues common to both actions which were either expressly or by necessary implication adjudicated in the first." 2 A. Freeman, A Treatise of the Law of Judgments § 677, at 1429–30 (5th ed. 1925); *see Baltimore S.S.*, 274 U.S. at 319, 47 S.Ct. at 602. We refer to this strand of former adjudication as "issue preclusion." *See* Restatement (Second) of Judgments § 17 comment c (1982).

Closely related to the doctrines of claim and issue preclusion is the doctrine of "law of the case." This is a

rule of practice under which a rule of law enunciated by a federal court "not only establishes a precedent for subsequent cases under the doctrine of stare decisis, but [also] establishes the law which other courts owing obedience to it *must,* and which it itself will, normally, apply to the same issues in subsequent proceedings in the same case."

*Morrow v. Dillard*, 580 F.2d 1284, 1289 (5th Cir.1978) (quoting 1B J. Moore, Moore's Federal Practice ¶ 0.404[1] (2d ed. 1974) (footnotes omit-

ted)) (emphasis in original). While the law of the case does not bar litigation of issues "which might have been decided but were not," *id.* at 1290, it does require a court to follow what has been decided explicitly, as well as by necessary *implication,* in an earlier proceeding, *id.* The distinction between law of the case and claim preclusion is that the former bars relitigation of legal rules while the latter bars relitigation of claims (i.e., legal rules applied to the facts of the case). In addition, law of the case bars only those legal issues that were actually, or by necessary implication, decided in the former proceeding, while claim preclusion bars relitigation not only of claims raised but also claims that could have been raised. *Id.* Law of the case differs from issue preclusion in that the former applies only to proceedings within the same case, while the latter applies to proceedings in different cases.

**4.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

control the proceedings, examine and cross-examine witnesses and appeal from the judgment if an appeal lies." 1 A. Freeman, A Treatise of the Law of Judgments § 430, at 936–37 (5th ed. 1925). Thus, one who participates in a chapter 11 plan confirmation proceeding becomes a party to that proceeding even if never formally named as such. *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1051 (5th Cir.1987); *see In re Met–L–Wood Corp.*, 861 F.2d 1012, 1016 (7th Cir.1988).

Any "party in interest may object to confirmation of a plan." 11 U.S.C. § 1128. The Wallises, as guarantors of Justice Oaks' loan from Park Bank, clearly were parties in interest,[5] and the bankruptcy court, in considering the Wallises' objection, treated them as such. Therefore, we conclude that, for the purposes of former adjudication, the Wallises were parties to the confirmation proceeding.[6] Moreover, the record indicates that the Wallises had a full and fair opportunity to participate in that proceeding and took advantage of that opportunity. Finally, we note that there is complete identity of parties since Allegheny and Justice Oaks, the other parties to the current proceeding, were obviously parties to the confirmation proceeding as well.

Finally, the claims made in the Wallises' adversary complaint involve the same cause of action at issue in the confirmation proceeding. Claims are part of the same cause of action when they arise out of the same transaction or series of transactions. *See* Restatement (Second) Judgments § 24 (1982). In this case, all of the Wallises' claims in their adversarial proceeding are based on the same transaction (the alleged fraudulent buy-out of Allegheny's partnership interest, along with the attendant misrepresentations of Rodney Propps) that gave rise, in part, to the terms of the plan. Therefore, the order confirming that plan was based, in part, on the transaction at the core of the Wallises' present claims. Consequently, the Wallises' present claims are based on the same cause of action that gave rise to their objection to confirmation

---

**5.** All creditors of a debtor are parties in interest. *See* 8 Collier on Bankruptcy ¶ 3020.04 (15th ed. 1989). A "creditor" is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(9)(A). A "claim" for the purposes of the Code means any "right to payment, whether or not such right is ... fixed, contingent, matured, [or] unmatured." *Id.* § 101(4)(A). Obviously, the Wallises had a "claim," albeit a contingent or unmatured claim, which, in turn, made them "creditors" of Justice Oaks and thus "parties in interest" to the confirmation proceeding.

**6.** We reach this conclusion even though the Wallises did not have an allowable claim against Justice Oaks and could not request equitable subordination or imposition of an equitable lien. As we note above, neither Park Bank nor the FDIC had foreclosed on the loan to Justice Oaks. Thus, the Wallises have never become liable on their guarantee and, at most, could only speculate as to the amount of their liability should the FDIC foreclose and attempt to sell the guest house and administration building. Under the Bankruptcy Code, "the court shall disallow any claim for reimbursement or contribution of an entity that ... has secured the claim of a creditor, to the extent that ... such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution." 11 U.S.C. § 502(e)(1).

Because the Wallises did not, and still do not, have an allowable claim, they could not request equitable subordination of Allegheny's claim to their own. *See* 11 U.S.C. § 510 ("the court may[,] ... under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of *another allowed claim*" (emphasis added)). Nor could the Wallises request imposition of an equitable lien since "there has to be a debt before you can ... impose a lien," *see Flowers v. Miskoff*, 233 So.2d 201, 205 (Fla.Dist.Ct.App. 1970). The Wallises have never been indebted to anyone, nor has anyone been indebted to the Wallises.

All of this simply means that the Wallises' adversary complaint is premature and would normally be dismissed for that reason. This does not mean, however, that the Wallises could not object to confirmation of the plan and become parties to the confirmation proceeding. As we note in the text, any party in interest may object to confirmation. Although neither the Bankruptcy Code nor the rules define party in interest, it is clear that an allowable claim is not a necessary element of such a party's interest. *Cf.* 8 Collier on Bankruptcy, *supra* ¶ 3020.04[1]. As we explain in the text, the Wallises did have a sufficient interest in the estate to qualify them as parties in interest. Therefore, the Wallises could become bound by the court's order confirming the plan even though they had no allowable claim at the time.

of the plan.[7]

The bankruptcy court's order confirming the plan satisfies the four essential elements of claim preclusion. We next decide exactly what the Wallises are barred from relitigating in their adversary proceeding.

### 2.

■ When all of the requirements of claim preclusion are satisfied, "the judgment or decree upon the merits in the first case is an absolute bar to the subsequent action or suit between the same parties ... not only in respect of every matter which was actually offered and received to sustain the demand, but also as to every [claim] which might have been presented." *Baltimore S.S.*, 274 U.S. at 319, 47 S.Ct. at 602. Thus, to determine whether the Wallises are now precluded from litigating the claims advanced in their adversary proceeding, we must establish whether any or all of those claims were actually made, *or could have been made*, in their objection to confirmation. *See In re Blanton Smith Corp.*, 81 B.R. 440, 442 (Bankr.M.D.Tenn. 1987); *Sanders v. GIAC Leasing Corp. (In re Sanders)*, 81 B.R. 496, 498 (Bankr.W.D. Ark.1987).

The Wallises, in their adversary complaint, make two arguments in support of their claims for an equitable lien on the proceeds from the sale to Arvida and for equitable subordination of Allegheny's claim: (1) that Allegheny engaged in "fraudulent" and "inequitable" conduct, and (2) that Allegheny is not a secured creditor since it is seeking to recover its investment or capital contribution in Justice Oaks. We think that these claims were, or at least could have been, raised in the Wallises' objection to confirmation. The Wallises did raise, in their objection to confirmation, the issue of Allegheny's alleged inequitable conduct. They argued in their objection that "it is now inequitable and unfair to propose that Allegheny ... receive a substantial portion of the debt due them, in light of the aforementioned inequitable conduct." The Wallises' objection did not expressly raise the claim that Allegheny was not a secured creditor, but it did allude to the fact that Allegheny's claim represented a claim for repayment of its partnership "interest" in Justice Oaks. The court specifically noted, in its order overruling the Wallises' objection, that the question of Allegheny's secured status had already been decided in favor of Allegheny and that it would not reconsider that decision.

■ The Wallises' objection was overruled, and they failed to appeal the order. The Wallises' adversary complaint essentially brings an impermissible collateral attack on the order confirming the plan. Because the claims raised in the Wallises' adversary complaint were already raised, or could have been raised, in their objection to confirmation, we hold that the doctrine of claim preclusion bars them from relitigating those claims.[8] We therefore affirm the district court, in turn affirming by operation of law the bankruptcy court's dismissal of the adversarial complaint on the ground of claim preclusion.[9]

---

7. Finally, we note that the bankruptcy court's order confirming the plan did not resolve pure legal issues; instead, it determined "claims." Claim preclusion, rather than law of the case, is therefore the proper doctrine under which to analyze that order.

8. The court based its decision to overrule the objection on the law of the case as established by its order authorizing settlement. As we note earlier, however, that order was not a final judgment on the merits and therefore had no preclusive effect. *See supra* at 1548–1550. Thus, the court's decision to overrule the objection to confirmation might have been erroneous. Nevertheless, assuming all other necessary elements are present, an erroneous former judg-

ment from which no appeal is taken may still have full preclusive effect. *See North Carolina R.R. v. Story*, 268 U.S. 288, 292, 45 S.Ct. 531, 533, 69 L.Ed. 959 (1925).

9. As we state above, *see supra* note 6, the adversarial complaint could also have been dismissed because the claims made in it were premature. Thus, there were alternative grounds for dismissing the complaint: (1) the claims made were based on issues that were barred from relitigation by the order confirming the plan, and (2) the claims made were premature. Both the district court and the bankruptcy court relied on the first alternative, and we find no fault in their doing so. We therefore base our decision as well on that alternative, while noting

### III.

The bankruptcy court, citing the preclusive effect of its orders authorizing settlement and confirming the plan, overruled the Wallises' objection to Allegheny's claim. The district court affirmed on the basis of res judicata. We think that the question of former adjudication should never have been reached with regard to this objection since the Wallises had previously waived their right to object by failing to object prior to confirmation of the plan.

Under the Bankruptcy Code, "[a] claim ... is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a) (1988). Allegheny filed a proper proof of claim, and the Wallises, as parties in interest, had the right to object to that claim, *see supra* note 5; *cf.* 3 Collier on Bankruptcy ¶ 502.01[2] (15th ed. 1989) (creditor of nondebtor general partner, whose partnership is debtor, is party in interest since possible exposure of general partner might hinder creditor's ability to collect). Bankruptcy Rule 3007 sets forth the procedure for filing an objection to a claim, but that rule does not provide any time limits for filing an objection. The Fifth Circuit, however, has found such a deadline implicit in several provisions of the Code. In *Simmons v. Savell (In re Simmons)*, 765 F.2d 547 (5th Cir.1985), the court considered an objection, filed after confirmation of a plan, to a secured claim. Although the plan was a chapter 13 plan, most of the court's reasoning is applicable to confirmation of chapter 11 plans. The court held that "under section[ ] 506(a) [which applies in chapter 11 proceedings], a proof of secured claim must be acted upon—that is, allowed or disallowed—before confirmation of the plan or the claim must be deemed allowed

for purposes of the plan. *See* 11 U.S.C. § 502(a)." [10] *Simmons*, 765 F.2d at 553. The court went on to hold that "because no objection was filed before confirmation of [the] plan, [the] claim should have been deemed an allowed secured claim for purposes of confirmation." *Id.* at 554.

While there is some dispute over the breadth of the *Simmons* court's holding, we think that it at least stands for the proposition that, when the objection is based on an argument that the plan misclassified the objectionable claim, the objection must be made prior to confirmation of the plan. *Cf.* 8 Collier on Bankruptcy, *supra* ¶ 3007.03, at 3007–8 ("*Simmons* ... involved claim[ ] misclassified in the plan"). We find that proposition to be compelling. Furthermore, we hold that the *Simmons* rule applies in this case to bar the Wallises' objection to Allegheny's claim. The Wallises alleged in their objection that Allegheny's claim was "not a proper and allowable claim" because it arose from the buy-out of Allegheny's partnership interest in Justice Oaks. In other words, the Wallises argued that the plan, which classified Allegheny's claim as secured, misclassified the claim. Under the rule of *Simmons*, which we adopt today as characterized above, the Wallises lost their right to object to Allegheny's claim when the bankruptcy court confirmed the plan.[11] We therefore affirm the district court and, by operation of law, the bankruptcy court order overruling the Wallises' objection to Allegheny's claim.

### IV.

Finally, we come to the bankruptcy court's order denying the Wallises' motion to require funds from the sale of Justice

---

that, had there been no claim preclusion, we nevertheless would have affirmed the dismissal on the second alternative.

**10.** Section 506(a) provides that when a creditor files proof of a secured claim, the value of a creditor's interest in the estate "shall be determined ... in conjunction with any hearing ... on a plan affecting such creditor's interest." 11 U.S.C. § 506(a).

**11.** This result is proper even though the bankruptcy court set a bar date for filing objections

*after* confirmation of the plan. The Wallises argue that because they complied with the court's bar date their objection must be timely. We are not persuaded. The bankruptcy court certainly has discretion to set a bar date, but the bar established by confirmation of a plan arises from provisions of the Bankruptcy Code and cannot be overridden by the court. Therefore, a bankruptcy court may not establish a bar date for objections based on misclassification of claims after confirmation of the plan.

**1554**

Oaks' property to be maintained in escrow. That motion was based on the pendency of several proceedings. With our disposition of this appeal, however, none of those proceedings remain pending. We therefore find no reason to require maintenance of the sale proceeds in escrow and accordingly affirm the order denying the Wallises' motion.

## V.

For the foregoing reasons, we affirm the district court's judgment affirming the three bankruptcy court orders.

AFFIRMED.