**In re Dick DEGENAARS and Jan M. Degenaars, Debtors.**

**No. 97–7102–3F7.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

April 12, 2001.

---

**50.** (Docket No. 28 (Mar. 5, 1999)).

**51.** (Docket No. 29 (May 11, 1999)).

Gregory K. Crews, Jacksonville, FL, Chapter 7 Trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Case is before the Court on the Notice of Intent to Compromise ("the Compromise") filed by Gregory, K. Crews, Chapter 7 Trustee ("Trustee"), on January 31, 2001. (Doc. 23.) Dick Degenaars and Jan M. Degenaars ("Debtors") filed an Objection to Notice of Intent to Compromise ("Objection") on February 20, 2001. (Doc. 31.) The Court held an evidentiary hearing on the Compromise on April 4, 2001 and took the matter under advisement. Upon review of the evidence presented and upon review of the arguments made at the hearing, the Court finds it appropriate to approve the Compromise and to overrule Debtors' Objection.

### FINDINGS OF FACT

In 1997 Debtors filed a hostile environment sexual harassment suit ("the damages action") against Debtor Jan Degenaar's former employer, Peter A. Jeffer ("Jeffer"), in the United States District Court, District of New Jersey, Civil Action No. 97–3478(AMW). Debtors also brought State Farm, Jeffer's liability insurer, into the action as a "deep pocket."

Debtors retained Savage and Associates of Lambertville, New Jersey as counsel in

the damages action. Thomas J. Savage ("Savage"), an attorney with thirty years' experience in personal injury work, oversaw the damages action. An associate, Beverly Wurth ("Wurth"), handled the day-to-day management of the damages action.

Debtors testified that Savage valued the claim at 5300,000.00 to 500,000.00 when they first consulted with him.

On September 19, 1997, Debtors filed a voluntary petition for Chapter 7 bankruptcy relief.

According to Debtors' Schedule F, Debtors owe $40,657.00 in unsecured, nonpriority debt. According to Trustee, about $14,000.00 in claims have been filed to date.

On January 19, 2000. Trustee filed an Application to Employ Thomas J. Savage as Special Attorney for the Trustee. (Doc. 21.) Trustee requested that the Court approve the continuing employment of Savage to prosecute the damages action in New Jersey on behalf of the estate.

Along with the Application to Employ, Trustee filed a Declaration of Attorney signed by Savage. By signing the Declaration, Savage acknowledged that the Court must approve any compensation for his services upon a fee application pursuant to 11 U.S.C. § 328 and § 330. Savage also agreed to turn over the gross proceeds from any settlement of the damages action directly to Trustee pending the disposition of a subsequent fee application.

On January 19, 2000, the Court entered an Order Granting Trustee's Application to Employ. (Doc. 22.) The Order provided that Savage's compensation would be determined by the Court upon a fee application pursuant to § 328 and § 330.

Savage proceeded to prosecute the damages action in New Jersey on behalf of Trustee.

Trustee testified that, throughout the course of the damages action, he had great difficulty communicating with Savage and convincing Savage to keep him updated. Debtors testified that Savage continually contacted them despite their admonitions that Trustee now controlled the damages action.

Savage and Wurth testified that the damages action began to lose steam during pretrial conferences with the New Jersey trial judge, whom, according to Savage and Wurth, was hostile to the damages action going to trial.

State Farm approached Savage and offered 60,000.00 to settle the damages action. According to Wurth. State Farm asserted that if Trustee refused to settle it would seek summary judgment absolving it of its responsibility to defend Jeffer and absolving it of its responsibility to pay any jury award grounded on sexual harassment by Jeffer. State Farm took the position that Jeffer's actions were intentional and thus outside his liability coverage.

Wurth testified that State Farm would almost certainly be granted summary judgment if it so moved.

Wurth testified that State Farm represented Debtors' only hope for collection of an eventual award from the damages action.

Savage and Wurth testified that a trial on the damages action would come down to a credibility battle between Jeffer and Jan Degenaars. Savage and Wurth further testified that, in their opinion, going to trial was not worth the financial or emotional costs to Debtors.

Savage testified that, because of the risk of defeat before a jury, the possibility of never collecting from Jeffer, and the cost of trial, he agreed to settle the damages action for $60,000.00. Jeffer testified that Debtors agreed to the settlement.

Debtors denied agreeing to a settlement of the damages action.

Debtors accused Savage and Wurth of ignoring potential evidence corroborating Jan Degenaars' testimony. Debtors testified that Savage reneged on the original retainer agreement by demanding that Debtors pay up front for their expert witnesses in case the damages action went to trial. Debtors testified that they told Savage that they were willing to undergo the expense and stress of trial.

Debtors testified that Jeffer is not judgment proof and accused Savage and Wurth of laziness in tracking down Jeffer's assets. Debtors also indicated that they did not care about actually collecting any damages from State Farm or Jeffer.

## CONCLUSIONS OF LAW

### I. AUTHORITY TO COMPROMISE AND STANDING TO OBJECT

Pursuant to 11 U.S.C. § 541, a trustee in bankruptcy succeeds to all causes of action held by a debtor at the time a bankruptcy petition is filed, including damages actions. *See Jones v. Harrell*, 858 F.2d 667, 669 (11th Cir.1988). Only a trustee may move for court approval of a compromise or settlement of a personal injury action that is property of a Chapter 7 estate. *See id.* However, a debtor may object to the approval of a compromise of a damages action if a debtor may receive some disbursement or refund from an estate or if a debtor is provided for in any way by a plan of reorganization. *See In re Bicoastal Corp.*, 164 B.R. 1009, 1015 (Bankr.M.D.Fla.1993).

### II. STANDARD FOR APPROVAL OF COMPROMISES

Any compromise agreed to by a trustee or by a trustee's special counsel in a damages action that is property of the estate has no effect until approved by a bankruptcy court under Rule 9019, Federal Rules of Bankruptcy Procedure. Rule 9019 provides for approval of compromises upon a motion by a trustee and after notice and a hearing. Rule 9019 gives a court broad discretion in approving compromises. *See In re Kay*, 223 B.R. 816, 819 (Bankr.M.D.Fla.1998).

A court should approve a compromise if the compromise is fair and equitable and in the best interest of an estate. *See In re Kay*, 223 B.R. at 819. In determining whether or not a compromise of a damages action brought by a trustee on behalf of an estate is fair and equitable and in the best interest of an estate, a court should consider:

(1) The probability of success in the litigation;

(2) the difficulties, if any, to be encountered in the matter of collection;

(3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

(4) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Wallis v. Justice Oaks II Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir.1990). The "probability of success" factor requires an inquiry similar to the "substantial probability of success on the merits" inquiry undertaken by a court in evaluating a request for preliminary injunction. *See id.*

The burden of proof is on a trustee to show that a proposed compromise is fair and equitable. *See In re Kay*, 223 B.R. at 819.

### III. APPLICATION TO THE INSTANT CASE

#### A. Debtors' standing to challenge the Compromise

The Court finds that Debtors have standing to challenge approval of the Com-

promise by virtue of the fact that the Compromise will provide for a refund to Debtors after full payment to all creditors. Trustee testified that only $14,000.00 in claims have been filed. Therefore, Debtors stand to gain $46,000.00, minus Trustee's costs and Savage's fees, if the settlement is approved. Debtors feel they could gain considerably more if the Compromise is rejected and a higher award eventually made. Therefore, Debtors have a concrete interest in the Compromise of the damages action beyond the fact that it belonged to them prepetition. Such a postpetition interest empowers them to challenge approval of the Compromise.

### B. Is the Compromise fair and equitable?

██ The Court finds that the Compromise of $60,000.00 for the damages action is fair and equitable and should be approved.

First, the Court finds that Trustee brought forward sufficient evidence to show by a preponderance that success on the merits of the damages action is not substantially probable. The damages action comes down to a credibility contest between Jan Degenaars and Jeffer before a jury. Such an evidentiary toss-up is inherently risky and unpredictable. Rejection of the Compromise could very well lead to total defeat.

Second, the Court finds that Trustee brought forward sufficient evidence to show by a preponderance that there will be significant difficulties in collecting any eventual jury award against Jeffer. It appears from the evidence that, if the Compromise is not approved, Jeffer's insurer, State Farm, will be able to escape any liability for Jeffer's acts. Trustee would lose the only "deep pocket" for collection. Even if the Court were to accept Debtors' testimony as to Jeffer's ability to pay a judgment, the cost of pursuing traditional levy-and-attachment collection could be a significant drain on the estate. Taken in combination with the risk of losing before a jury, the cost of collecting any eventual jury award influences the Court to view the proposed Compromise as a fair and equitable estimation of the value of the damages action.

Third, the Court finds that Trustee brought forward sufficient evidence to show by a preponderance that future litigation of the damages action will be complex, costly and inconvenient. Debtors may be willing to bear these costs despite the risks because their interest in the damages action is not purely pecuniary. However, the estate's interest in the damages action is purely pecuniary, and it is the estate that will be forced to bear the cost of hiring any expert witnesses and the estate that will have to reimburse Savage for his reasonable costs. It appears that such costs are not justified by a substantial probability of success at trial or by a substantial probability of collecting a jury award.

Finally, the Court finds that Trustee brought forward sufficient evidence to show by a preponderance that the paramount interests of creditors will be best served by the proposed compromise. The compromise will provide for full payment of Debtors' creditors. Rejection of the compromise might result in zero distribution to creditors. The high cost of potential defeat or failure to collect to Debtors' creditors advises against risking a trial of the damages action.

Therefore the Court finds that Trustee has demonstrated the fairness of the Compromise by a preponderance of the evidence. The balance of risks against re-

wards tilts toward settling the damages action on the terms proposed.

## IV. OTHER ISSUES REGARDING SAVAGE AND ASSOCIATE'S PROSECUTION OF THE DAMAGES ACTION

The Court notes that its decision to approve the Compromise does not conclusively dispose of Debtors' complaints regarding Savage and Associate's prosecution of the damages action.

## CONCLUSION

The Court finds that the Compromise submitted for approval by Trustee is fair and equitable and in the best interests of creditors, and should be approved.

The Court will enter a separate Order in accordance with these Findings of Fact and Conclusions of Law.