In re Lucinda MORRIS, Debtor.

In re Tonika Denise Furman, Debtor.

In re Henrietta T. Young, Debtor.

In re Lisa Kokoruda, Debtor.

Nos. 01–41877–JDW, 99–42545–JDW, 01–40731–JDW, 01–42483–JDW.

United States Bankruptcy Court,
S.D. Georgia,
Savannah Division.

Dec. 10, 2002.

Barbara Braziel, Savannah, GA, for Ms. Morris.

Claire G. Watts, Savannah, GA, for Ms. Furman.

R. Wade Gastin, Savannah, GA, for Ms. Young.

John E. Pytte, Hinesville, GA, for Ms. Kokoruda.

Mark Bulovic, Savannah, GA, for Creditors.

## MEMORANDUM OPINION

JAMES D. WALKER, JR., Bankruptcy Judge.

These matters come before the Court on General Motors Acceptance Corporation's and DaimlerChrysler North America, LLC's motions for relief from stay. These are core matters within the meaning of 28 U.S.C. § 157(b)(2)(G). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

For purposes of this Opinion, the Court has consolidated four cases with substantially the same facts. In each case, the debtor filed a Chapter 13 petition and sought to repay a debt to GMAC or to DaimlerChrysler secured by a motor vehicle. The creditors are undersecured, so their claims have been bifurcated into secured and unsecured claims. Upon the debtors' failure to make timely payments, the creditors sought relief from the automatic stay so they could repossess and sell the collateral. In each of these cases, the Chapter 13 trustee objected to the creditor's claims at the hearing on the motion for stay relief and requested that the Court issue an order providing for the terms of continuing allowance of the creditor's claims. After entering preliminary orders granting stay relief, the Court reserved ruling on the trustee's objections and on the question of the consequences of stay relief on the creditors' secured and unsecured claims, if any. The Court now addresses those questions.

### Conclusions of Law

Allowance of claims in bankruptcy is governed by Section 502 of the Bankruptcy Code.[1] Under Section 502(a), claims are allowed unless a party in interest objects. 11 U.S.C. § 502(a). Following objection, a claim may be disallowed if it is unenforceable under state law. *Id.* § 502(b)(1). Once a claim has been allowed or disallowed, a party in interest may seek reconsideration, and the Court may change the status of claim, after notice and a hearing, according to the equities of the case. *Id.* § 502(j); Fed. R. Bankr.P. 3008.[2]

In an unpublished opinion, the Eleventh Circuit Court of Appeals stated that the

---

1. Section 502 provides in relevant part as follows:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects.

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]

. . .

(j) A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case. . . .

11 U.S.C.A. § 502 (West 1993 & Supp.2002).

2. "A party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order." Fed. R. Bankr.P. 3008

trustee may not unilaterally alter the status of a creditor's claims. *Systems & Servs. Tech. v. Dykes (In re Dykes)*, No. 01–15683, 37 Fed.Appx. 507, slip. op. at 5 (11th Cir. April 26, 2002) (unpublished).[3] The facts in *Dykes* are similar to those here. An undersecured creditor held a claim bifurcated into secured and unsecured components. *Id.* at 2. When the debtor failed to make payments to the creditor as required by the plan, the bankruptcy court granted stay relief, enabling the creditor to repossess and foreclose on its collateral, a motor vehicle. *Id.* The foreclosure sale resulted in a price less than the amount of the secured claim. *Id.* at 3. Nevertheless, the trustee indicated on a modified plan that the secured claim had been "paid out" and that the unsecured claim was "disallowed." *Id.* The court of appeals stated that, by his actions, the trustee abused his authority and noted that the Bankruptcy Code "envisions a *request* for alteration [of claims] and *approval* by the bankruptcy court." *Id.* at 3–4 (emphasis added). The confirmation of the modified plan did not constitute approval by the court of the change in the claim status. *Id.* at 4. And, "[b]arring disallowance or modification of claims as expressly authorized under the Bankruptcy Code the provisions of [the] Chapter 13 plan were *res judicata*" pursuant to 11 U.S.C. Section 1327.[4] *Id.* at 5.

The Court concludes that two procedural paths are open to the parties to modify the creditors' claims. First, the creditors may file amended claims, to which a party in interest may object.[5] Second, a party in interest may file a motion for reconsideration of the creditors' claims. In either case, the creditors may present evidence on the amount of money they received for the collateral and the procedures they followed in liquidating the collateral. The creditors' requests for stay relief in the cases at bar indicate that they intend to follow a course of action—liquidating their collateral—that should alter the debt underlying their claims. It falls to the Court now to reconcile the opinion in *Dykes* with the expected change in claims status based on the action the creditors said they intend to take. In *Matter of Coleman*, the court refused to allow modification of the debtor's Chapter 13 plan under Section 1329(a) to reclassify a secured claim as unsecured after foreclosure on the collateral produced a shortfall on the secured claim. 231 B.R. 397, 400 (Bankr.S.D.Ga.1999) (Davis, J.). This is consistent with Dykes, which prohibited a change in claim status via plan modification. No. 01–15683, slip. op. at 5. The court in *In re Johnson* agreed with *Coleman* that a secured claim cannot be reclassified through Section 1329(a). 247 B.R. 904, 908 (Bankr.S.D.Ga.1999) (Dalis, C.J.).

---

**3.** Although unpublished opinions from the Eleventh Circuit Court of Appeals "are not considered binding precedent," the Court considers them highly persuasive. 11th Cir. R. 36–2.

**4.** "The provisions of a confirmed plan bind the debtor and each creditor...." 11 U.S.C.A. § 1327(a) (West 1993).

**5.** If the Chapter 13 plan has not been confirmed, the debtor may object to the creditor's original claim. Post-confirmation objection to claims is problematic. No time limit is imposed on objections to claims. *See* Fed. R.

Bankr.P. 3007. Nevertheless, the Eleventh Circuit has held that parties may not object to secured claims after plan confirmation in an attempt to reclassify those claims. *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1553 (11th Cir.1990); *In re Clark*, 172 B.R. 701, 704 (Bankr.S.D.Ga. 1994) (Walker, J.). The full scope of *Justice Oaks* is unclear. However, it does not prevent reconsideration of secured claims under 11 U.S.C. § 502(j). *See Fryer v. Easy Money Title Pawn, Inc. (In re Fryer)*, 172 B.R. 1020, 1024–25 (Bankr.S.D.Ga.1994).

However, the court said the claim could be reconsidered under Section 502(j) and allowed as unsecured. *Id.* Furthermore, if such a reconsideration occurs, the creditor can "seek allowance of a priority claim for an administrative expense caused by the failure of the plan adequately to protect the creditor's interest." *Id.* at 909. This reinforces the conclusion that GMAC and DaimlerChrysler's claims are not altered merely by lifting the stay and allowing them to foreclose. Rather, the creditor must take affirmative action to amend the claims or some other party must seek to have them reconsidered.

■ In each of these cases we have the trustee's objection to the secured creditor's claim based on an assumption that the secured creditor intends to exercise its state law remedies following granting of the relief from stay, thereby reducing the amount of its claims. It is simple enough to postpone consideration of the trustee's objection for a time to allow the creditor to file an amended claim. What is more problematic are the consequences if the creditor fails to file an amended claim. To resolve this procedural dilemma, the Court will enter an Order requiring the trustee to make disbursements on the creditors' claims for a period of 60 days [6] following entry of the stay relief orders.[7] During that time, the creditors may file amended claims to which a party in interest may object. In the alternative, the creditors may request some other treatment, such as an extension of the deadline for filing amended claims. If the creditors take no action during the 60–day period, the terms of the Order will provide that the secured claim was satisfied by the foreclosure proceeds and will designate the creditors' secured claims as paid in full.[8]

The effect of this Opinion and Order is to require the creditors to take steps within a reasonable time to report on the change in the status of their claims, if any. This provision would not be necessary if all secured creditors promptly reported to the Court with amended claims indicating the results of their foreclosure efforts and any resulting deficiencies. However, experience has shown that creditors are not always so diligent. By entry of this Order, the Court provides the procedure for treatment of a creditor's claims in these circumstances.[9] It imposes the burden on

6. This time period applies to the four cases in controversy in this Opinion. It is not intended as precedent to be applied in all future cases. Each case will be decided on a case-by-case basis.

7. This disbursement will be made regardless of the timing of the filing of an amended claim. If the amended claim is filed within the 60–day period (or such later time as the Court may authorize) and the claim demonstrates that the creditor is entitled to continued disbursements, such disbursements will continue until the claim is modified by an order of the Court after objection by a party in interest or paid in accordance with the terms of the confirmed plan.

8. The filing of an amended claim will end the Court's consideration of the objection to the claim imposed by the trustee at the hearing on the motion for stay relief. After reviewing the amended claim, the trustee may file a further objection. The disposition of any such objection may vary depending on the facts of the case. In addition, the issue remains as to whether a creditor's unsecured claim should be deemed satisfied by the failure of the creditor to file an amended claim. Any creditor or party in interest urging such a conclusion must do so by objection filed specifically for that purpose.

9. Of course, the debtor and creditor may enter into an agreement providing for terms other than those provided in this Opinion and Order, subject to any objection that might be raised by the Chapter 13 trustee. Such an agreement would satisfy *Dykes* because it would be an affirmative undertaking by the creditor, debtor, and trustee requiring court approval. A further possibility is that one of the parties might want to contend that some

the only party in a position to know fully the details of the change in claims status and fixes the consequences of inaction on that party.

This Opinion, however, does not decide the question of what will happen when the creditors file amended claims pursuant to the Order in this case. If the creditors' claims are not deemed paid based on failure to file an amendment, then the claims will be allowed subject to objection by an interested party. Such objection may address any justiciable claims issue—e.g., failure to comply with state law requirements for disposition of collateral or treatment pursuant to *Coleman* and *Johnson*—and, at that time, will require a ruling on any unsettled issue raised by the objection.

In each of these cases, the trustee objected to the creditor's claims at the hearing on the motion for stay relief and requested that the Court issue an order providing for the terms of continuing allowance of the creditor's claims. This Opinion and accompanying Order serve that purpose. They establish a procedure and a timetable whereby creditors can resist the trustee's objection or acquiesce in the trustee's request to designate the claims as satisfied. The Order provides for a reasonable period of continuing disbursement on the claims to give the creditors a chance to enforce the provisions of their security agreements by foreclosure. It avoids the necessity for the trustee to

seek reimbursement for overpayment when the creditor has failed to file an amended claim.

An Order in accordance with this Opinion will be entered on this date.

## ORDER

In accordance with the Memorandum Opinion entered on this date, it is hereby

ORDERED that the Chapter 13 trustee make disbursements on the claims of General Motors Acceptance Corporation and DaimlerChrysler North America, LLC for a period of 60 days from the date of the entry of the corresponding order for stay relief; and it is hereby further

ORDERED that if no action has been taken by the creditor in each case during the 60 day period (1) to request extension of the 60 day period for cause, (2) to amend the claim to credit proceeds of the foreclosure, or (3) to report that no change in the claim is warranted because the creditor chooses to abandon the collateral, that creditor's secured claim will be reduced to the amounts paid and deemed satisfied.

---

other procedure should be followed. Any dispute as to procedure that varies from the terms of this Opinion can be raised and considered at the hearing on a motion for stay

relief. The end result of all these possibilities is to establish a procedure for treatment of a secured creditor's claims at the time of the entry of order granting stay relief.