[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

───────────

No. 07-15897

───────────

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 15, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-61410-CV-CMA
BKCY No. 05-22074 BKC-JKO

In Re:  DENIS CHIRA,

Debtor.

_____

ELIZABETH CHIRA,

Plaintiff-Appellant,

versus

JOSÉ SAAL,
SONYA L. SALKIN,

Defendants-Appellees.

───────────

No. 08-10400

───────────

D.C. Docket No. 07-60049-CV-CMA
BKCY No. 05-22074-BKC-JKO

In Re:       DENIS CHIRA,
             f.d.b.a. Credit Counseling Corp.,
             f.d.b.a. Eagle Nest of Hollywood, Inc., etc.,

Debtor.

_____

ELIZABETH CHIRA,

                                        Plaintiff-Appellant,

                        versus

SONYA L. SALKIN,

                                        Defendant-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(May 15, 2009)

Before DUBINA, BLACK and FAY, Circuit Judges.

DUBINA, Circuit Judge:

Denis and Elizabeth Chira acquired the Sheldon Beach Hotel in 1978 and operated the hotel together for over 20 years. In 1999, the couple decided to part ways, and for the past 10 years, Denis and Elizabeth have been locked in bitterly contested litigation over control of the hotel in both state and federal court. The Chiras' state court divorce proceeding resulted in the formation of a contract for purchase of the hotel between a divorce court-appointed receiver and José Saal. Before this purchase contract was executed, the Chiras found themselves in federal

court by way of Denis's Chapter 7 bankruptcy case. The bankruptcy court approved a settlement agreement between José Saal and the Trustee of Denis's bankruptcy estate, which calls for the performance of the Saal purchase contract, and the district court affirmed the bankruptcy court's order. For the reasons that follow, we affirm the district court's judgment affirming the bankruptcy court's approval of the sale of the hotel to José Saal.

## I. BACKGROUND

A. *Divorce Court Proceedings*

In 1999, Elizabeth filed for divorce from Denis in the circuit court of Broward County, Florida, and the divorce proceedings continued for several years. As a result of ongoing disputes between Denis and Elizabeth over the operation of the hotel, Elizabeth requested the appointment of a receiver to run the hotel. The divorce court granted this request. Concluding that the Chiras were incapable of running the hotel together, the divorce court entered an order establishing procedures for the sale of the hotel, and Elizabeth immediately appealed. While the appeal was pending, pursuant to the divorce court's order, the receiver entered into a contract for the sale of the hotel with José Saal. The divorce court approved the receiver's purchase contract with Saal, but stayed the effectiveness of the sale pending the disposition of Elizabeth's appeal of the divorce court's earlier sale

3

procedures order. Elizabeth did not appeal the order approving the sale of the hotel to Saal. Florida's Fourth District Court of Appeal subsequently affirmed the sale procedures order, triggering the effectiveness of the divorce court's order approving the sale of the hotel. The divorce court then granted the joint request of Denis and Elizabeth to discharge the receiver. Despite discharging the receiver, the divorce court denied Elizabeth's subsequent motion to set aside the purchase contract between Saal and the receiver.

B. *Bankruptcy Court Proceedings*

Before the Saal purchase contract was performed, Denis's creditors filed an involuntary petition for bankruptcy seeking relief under Chapter 7 of the Bankruptcy Code. The bankruptcy court entered an order for relief and appointed Sonya L. Salkin as Trustee of Denis's estate. The Trustee and Saal entered into a settlement agreement entitled "Agreement for Assumption of José Saal Contract With Modifications and for Settlement of Disputes." Under the terms of the settlement agreement, Saal agreed to pay $2,000,000 to the Trustee as consideration for the Trustee's agreement to assume the Saal purchase contract and to commence and diligently prosecute an adversary proceeding to clear title to the hotel. Pursuant to her obligations under the settlement agreement, the Trustee made a motion to assume the Saal purchase contract under 11 U.S.C. § 365. In its

4

order approving the assumption of the purchase contract, the bankruptcy court focused on three issues: whether assumption of the purchase contract was in the best interests of the estate, whether the divorce court intended the purchase contract to bind the Chiras despite the dismissal of the receiver, and whether the Trustee properly moved for a retroactive extension of the deadline to assume executory contracts. *See In re Chira*, 343 B.R. 361, 371 (Bankr. S.D. Fla. 2006). The bankruptcy court did not independently evaluate the settlement agreement between Saal and the Trustee under the test for the approval of a settlement agreement in bankruptcy announced by this court in *In re Justice Oaks II, Ltd.*, 898 F.2d 1544 (11th Cir. 1990) ("*Justice Oaks*").

Elizabeth appealed the bankruptcy court's order approving the settlement agreement and assumption of the Saal purchase contract to the Southern District of Florida, arguing that the bankruptcy court improperly approved the assumption of the pre-bankruptcy purchase contract under § 365 because the settlement agreement between Saal and the Trustee substantially modified the original purchase contract. According to Elizabeth, this modification triggered her rights as co-owner of the hotel under 11 U.S.C. § 363. Elizabeth did not appeal the bankruptcy court's conclusion that the divorce court intended the Saal purchase

contract to bind the Chiras or the bankruptcy court's conclusion that the Trustee properly moved for a retroactive extension of the deadline for assumption.

Although the district court affirmed the bankruptcy court's order approving the settlement agreement, the district court did not conduct an analysis of the settlement agreement under *Justice Oaks*. Instead, the district court focused almost exclusively on the bankruptcy court's approval of the assumption of the Saal purchase contract under § 365. After reviewing the text of § 365 and case law from other circuits, the district court concluded that § 365 may be used to assume executory contracts that have been modified after the filing of a petition for relief in bankruptcy. On the basis of this conclusion, the district court determined that "[t]he Bankruptcy Court was not required to apply section 363 in the sale of the Hotel and did not err when it permitted the sale under section 365." *Chira v. Saal* (*In re Chira*), 367 B.R. 888, 900 (S.D. Fla. 2007). Elizabeth appeals the district court's decision.

While the proceedings concerning the approval of the settlement agreement and assumption of the purchase contract were pending, the Trustee brought an adversary proceeding in the bankruptcy court against Elizabeth and other creditors of Denis's estate to "determine the validity, priority, and amount of those deeds made and obligations incurred by [Denis]" and "to obtain determinations of many

collateral issues involving mortgagees, lienholders, co-owners, and an insider lessee, that affect the Trustee's ability to liquidate the estate." *Salkin v. Chira* (*In re Chira*), 353 B.R. 693, 699 (Bankr. S.D. Fla. 2006).

After holding a lengthy trial resulting in extensive findings of fact, the bankruptcy court concluded that Elizabeth had engaged in a pervasive pattern of underhanded and manipulative conduct, including the violation of various divorce court orders and voluntary settlement agreements, in an effort to harm Denis financially and to delay the sale of the hotel. On the basis of these findings, the bankruptcy court entered a final judgment equitably subordinating Elizabeth's claims to those of all the other creditors of the estate. The bankruptcy court also concluded that Elizabeth is not entitled to any portion of the $2,000,000 payment offered by Saal to the Trustee under the settlement agreement. The district court affirmed the bankruptcy court's final judgment in the adversary proceeding. *See Chira v. Salkin* (*In re Chira*), 378 B.R. 698, 717 (S.D. Fla. 2007). Elizabeth appeals the district court's judgment affirming the bankruptcy court's finding that Elizabeth is not entitled to any portion of the $2,000,000 payment under the settlement agreement.

## II. STANDARDS OF REVIEW

We review a bankruptcy court's findings of fact for clear error. *IBT Int'l, Inc. v. Northern* (*In re Int'l Admin. Servs., Inc.*), 408 F.3d 689, 698 (11th Cir. 2005). We review *de novo* conclusions of law, whether made by the bankruptcy court or the district court. *Id.* We review the bankruptcy court's approval of a settlement agreement under an abuse of discretion standard. *Christo v. Padgett*, 223 F.3d 1324, 1335 (11th Cir. 2000).

## III. ANALYSIS

A. *Approval of the Settlement Agreement and Assumption of the Saal Purchase Contract*

Elizabeth first contends that the district court erred in affirming the bankruptcy court's conclusion that the Saal purchase contract may be assumed under 11 U.S.C. § 365. Elizabeth argues that the settlement agreement between Saal and the Trustee substantially modifies the pre-bankruptcy purchase contract, triggering her rights under 11 U.S.C. § 363 as a non-debtor co-owner of the hotel. Thus, as an initial matter, we must determine whether the settlement agreement constitutes a modification of the pre-bankruptcy purchase contract between Saal and the state divorce court receiver.

Elizabeth argues that the settlement agreement's references to "modifications" compel the conclusion that the settlement agreement modifies the

8

Saal purchase contract. Saal and the Trustee contest this characterization, arguing that they did not intend for the settlement agreement to modify the pre-bankruptcy purchase contract and that the term "modifications" merely refers to new obligations undertaken by Saal and the Trustee to effectuate the purchase contract, in its original form, in the context of Denis's bankruptcy.

"Principles governing general contract law apply to interpret settlement agreements." *Resnick v. Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347, 1350 (11th Cir. 2000). The "'interpretation of private contracts is ordinarily a question of state law.'" *Chem. Bank v. First Trust of N.Y.* (*In re Se. Banking Corp.*), 156 F.3d 1114, 1121 (11th Cir. 1998) (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 60 n.4, 115 S. Ct. 1212, 1217 n.4, 131 L. Ed. 2d 76 (1995)); *see also Resnick*, 227 F.3d at 1350 n.4 ("Because this settlement agreement is between two private parties, federal common law does not apply."); *Hayes v. Nat'l Serv. Indus.*, 196 F.3d 1252, 1253 (11th Cir. 1999) (applying state law to construction and enforceability of settlement agreement arising under Title VII). "[T]he substantive law of the forum state governs issues of state law that arise in bankruptcy proceedings." *Menchise v. Akerman Senterfitt*, 532 F.3d 1146, 1150 (11th Cir. 2008 (citing *Colwell v. Royal Int'l Trading Corp.* (*In re Colwell*),

9

196 F.3d 1225, 1226 (11th Cir.1999)).  Therefore, we apply the law of Florida, the forum state, to determine the meaning of the settlement agreement.[1]

Under Florida law, "[t]he basic rule of contract interpretation is that the intention of the parties is to be determined from a consideration of the whole agreement." *Calderon v. J.B. Nurseries, Inc.*, 933 So. 2d 553, 556 (Fla. Dist. Ct. App. 2006); *see also Grimsley v. Inverrary Resort Hotel, Ltd.*, 748 So. 2d 299, 301 (Fla. Dist. Ct. App. 1999); *Dorson v. Dorson*, 393 So. 2d 632, 633 (Fla. Dist. Ct. App. 1981).  Considering the settlement agreement as a whole, we conclude that Saal and the Trustee intended for the agreement to settle their dispute over the validity of the pre-bankruptcy purchase contract between Saal and the divorce court receiver and to aid in the administration of the bankruptcy estate.  We do not read the settlement agreement to modify the terms of the pre-bankruptcy contract between Saal and the divorce court receiver for the purchase of the hotel.

Having determined that the settlement agreement does not modify the Saal purchase contract,[2] we next must decide whether the district court correctly

---

[1] The parties have not raised a conflict-of-laws issue and have not disputed that Florida law governs the interpretation of the settlement agreement.

[2] Because we hold that the settlement agreement does not constitute a modified executory contract, we need not address the district court's conclusion that modified executory contracts may be assumed under 11 U.S.C. § 365.

10

concluded that the bankruptcy court did not abuse its discretion by approving the settlement agreement.

As both the bankruptcy court and the district court noted, when making the decision to assume or reject the Saal purchase contract, the Trustee faced the prospect of a potentially massive claim against the estate for rejection damages.[3] A good deal of uncertainty surrounded Saal's potential claim because the claim hinged on the legal effect of the discharge of the divorce court receiver on the enforceability of the Saal purchase contract, an issue on which neither the bankruptcy court nor the parties could locate a single Florida case. Rather than litigate their dispute over this arcane[4] and uncertain legal issue, Saal and the Trustee decided to execute a settlement agreement.

Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." In this circuit, a bankruptcy court evaluating a proposed settlement must consider:

---

[3] Both the bankruptcy court and the district court concluded that Saal's claim for damages would be at least as large as the difference between the price received in a market sale and the purchase price under the original Saal contract. In addition, both the bankruptcy court and the district court opined that Saal may have been able to establish substantial consequential damages.

[4] To decide this issue, the bankruptcy court consulted *Wigton v. Climax Coal Co.*, 270 Pa. 420, 113 A. 425 (Pa. 1921), and *Madorsky v. Suburban Homes Co.*, 45 Ohio App. 83, 186 N.E. 371 (Ohio Ct. App. 1933).

(a) The probability of success in the litigation; (b) the difficulties, if any, to

be encountered in the matter of collection; (c) the complexity of the

litigation involved, and the expense, inconvenience and delay necessarily

attending it; (d) the paramount interest of the creditors and a proper

deference to their reasonable views in the premises.

*In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990) (quoting *Martin*

*v. Kane* (*In re A & C Prop.*), 784 F.2d 1377, 1381 (9th Cir. 1986)).[5] Courts

consider these factors to determine "the fairness, reasonableness and adequacy of a

proposed settlement agreement." *In re A & C Prop.*, 784 F.2d at 1381.

Although the bankruptcy court did not explicitly consider all four of the

*Justice Oaks* factors in its order approving the settlement agreement, we conclude

---

[5] Bankruptcy courts in other jurisdictions have suggested that "[w]hen the assumption or rejection of an executory contract or lease is one of the terms of a settlement or compromise . . . the proper test to be applied to the entire transaction is that for approval of a proposed settlement." *In re Mirant Corp.*, 348 B.R. 725, 743 (Bankr. N.D. Tex. 2006) (citing *In re Pinnacle Brands, Inc.*, 259 B.R. 46, 54 (Bankr. D. Del. 2001)). The settlement agreement between Saal and the Trustee, which contains the assumption of an unmodified executory contract as one of its terms, must meet the test for the approval of a proposed settlement agreement. We need not independently determine whether the assumption of the pre-bankruptcy Saal purchase contract meets the narrow business judgment standard applicable to the assumption of an executory contract. *See In re Gardinier, Inc.*, 831 F.2d 974, 976 n.2 (11th Cir. 1987) ("[S]ince courts review a trustee's decision to assume or reject a contract under a traditional 'business judgment' standard, the scope of review in this area is narrow."). However, when a settlement agreement contains the assumption of a pre-bankruptcy contract as one of its terms, the contract at issue must be executory in nature and meet the other basic requirements set forth in § 365. The district court correctly concluded that these basic requirements have been met in the instant case.

that the bankruptcy court did not abuse its discretion by approving the settlement agreement.

The bankruptcy court implicitly considered the first *Justice Oaks* factor—the probability of success in the potential litigation over Saal's claim for rejection damages—when it determined that the Saal purchase contract survived the divorce court's discharge of the receiver. Furthermore, the bankruptcy court concluded that Saal had a credible claim for both rejection and consequential damages that could significantly diminish the recovery of the unsecured creditors of Denis's estate. The bankruptcy court implicitly concluded that Saal had a strong probability of success in the potential litigation over his claim for rejection damages. We agree with the bankruptcy court's evaluation of Saal's probability of success, and we conclude that the first *Justice Oaks* factor supports the bankruptcy court's decision to approve the settlement agreement.

The bankruptcy court did not consider the second and third *Justice Oaks* factors—collection difficulties for the Trustee and the complexity, expense, inconvenience, and delay of the potential litigation over Saal's claim for rejection damages—in any meaningful way. The second factor is irrelevant in the instant case because collection difficulties for the Trustee are not an issue. With regard to the third factor, we conclude that Saal and the Trustee faced the possibility of

13

costly and protracted litigation over Saal's claim for rejection damages, which supports the bankruptcy court's decision to approve the settlement agreement.

The bankruptcy court explicitly evaluated the fourth *Justice Oaks* factor—the paramount interests of the creditors. Because the settlement agreement provides for payment in full of all the claims of all the creditors, we conclude that the bankruptcy court correctly found that approval of the settlement agreement is in the best interests of the creditors.

Because all three relevant *Justice Oaks* factors support the bankruptcy court's decision to approve the settlement agreement, we agree with the district court's finding that the bankruptcy court did not abuse its discretion in approving the settlement agreement between Saal and the Trustee.

B. *The $2,000,000 Payment Under the Settlement Agreement*

Elizabeth next contends that the district court erred in affirming the bankruptcy court's conclusion that she is not entitled to any portion of the $2,000,000 offered by Saal to the Trustee as consideration for the settlement agreement. Elizabeth argues that the bankruptcy court abused its discretion by exercising its equitable authority under 11 U.S.C. § 105 in contravention of the express provisions of 11 U.S.C. § 363. This argument is without merit.

The bankruptcy court based its conclusion that Elizabeth is not entitled to any portion of the $2,000,000 payment on both legal and equitable grounds, saying:

> I conclude, and equity dictates, that Elizabeth not receive half of the $2,000,000 premium offered by Saal to the estate in exchange for the court's approval of the assumption of the Saal contract. By its own terms, the addendum to the contract between the Trustee and Saal specifically provides that all of the extra funds would be paid to the estate. . . . Since I have previously ruled that the Saal contract *to which Elizabeth agreed in the prior divorce court litigation* remains a valid and enforceable executory contract, Elizabeth would have been bound by the $5.85 million sale price but for the filing of the involuntary bankruptcy petition against Denis, which gave rise to the possibility that the contract could be rejected under 11 U.S.C. § 365. The filing of the bankruptcy petition created a whole host of additional legal issues so that it was well worth Saal's while to offer an additional inducement to the Trustee, an inducement which Saal never would have had to offer if this bankruptcy case were not pending. Simply stated, Elizabeth would have received no more than one-half of $5,850,000 for her ownership interest if the Saal sale had gone forward as mandated by

15

the divorce court. That is precisely what she will get for her half interest in the [hotel] if the Saal sale closes. . . . Moreover, Elizabeth has done nothing to justify an enhancement of her position. To the contrary, her conduct . . . reflects a consistent and relentless effort to deprive Denis of his remaining equity in the [hotel] by any and all means possible, including many which no court of equity could countenance.

*In re Chira*, 353 B.R. at 728–29 (footnote omitted).

Elizabeth's argument ignores the fact that the district court ruled that she has no legal entitlement to payment under the settlement agreement. Elizabeth was legally bound by the Saal purchase contract prior to the filing of the bankruptcy petition, and she will not receive anything less upon the sale of the hotel under the terms of the settlement agreement than she would have received outside of bankruptcy. The bankruptcy court's discussion of Elizabeth's inequitable conduct does not detract from the force of its legal conclusions. We agree with the district court's finding that the bankruptcy court did not abuse its discretion by ruling that Elizabeth is not entitled to any portion of the $2,000,000 payment under the settlement agreement.

## IV. CONCLUSION

16

For the foregoing reasons, we affirm the district court's judgment affirming the bankruptcy court's order approving the sale of the hotel to Saal and its finding that Elizabeth is not entitled to any portion of the $2,000,000 offered by Saal to the Trustee under the settlement agreement.

AFFIRMED.