[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13549
Non-Argument Calendar

_____

D.C. Docket No. 1:20-cv-00201-KD-N,
Bkcy No. 1:17-bk-01568-HAC

In Re: JERRY DEWAYNE GADDY,

Debtor.

_____

SE PROPERTY HOLDINGS, LLC,

Plaintiff-Appellant,

versus

GADDY ELECTRIC & PLUMBING, LLC,
SHARON GADDY,
ELIZABETH GADDY RICE,
REMBERT LLC,
SLG PROPERTIES LLC,

Defendants-Appellees.

———————————————————

Appeal from the United States District Court
for the Southern District of Alabama

———————————————————

(April 26, 2021)

Before MARTIN, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

SE Property Holdings, LLC ("SEPH") appeals from the bankruptcy court's approval of a compromise in a Chapter 7 bankruptcy proceeding in which it was a creditor. SEPH had sued the debtor, Jerry Gaddy, in federal district court, alleging numerous fraudulent transfer and conspiracy claims. When Gaddy petitioned for bankruptcy, the district court stayed the litigation, the bankruptcy court appointed a trustee to administer the estate, and the Trustee became a party-in-interest in the district court litigation. Eventually, the Trustee and Gaddy asked the bankruptcy court to approve a compromise. When the bankruptcy court rejected this first compromise, the Trustee and Gaddy proposed a second compromise—this time for more than double the amount of the first proposed compromise. SEPH objected to both proposed compromises because they would have foreclosed SEPH's ability to pursue its claims in the district court litigation. The bankruptcy court approved the second compromise because it found that the compromise was fair, reasonable, and adequate. On appeal, SEPH contends that the bankruptcy court abused its

2

discretion by approving the second compromise.  Because the second compromise did not fall below the lowest point in the range of reasonableness, we affirm.

## I.    Background

In 2006, Jerry DeWayne Gaddy (and others) guaranteed two business loans by Vision Bank to Water's Edge, LLC to develop a real estate project in Alabama. The project failed, and Water's Edge defaulted on the loans.  Vision Bank eventually merged with SEPH and sold the Gaddy loans to SEPH.

In October 2010, Vision Bank (and later SEPH) sued Water's Edge and the loan guarantors in Alabama state court.  In December 2014, SEPH obtained a judgment against Gaddy and the other guarantors for approximately $9 million.

In 2016, SEPH sued Gaddy, his wife, his daughter, and several family-owned businesses in federal court, alleging numerous Alabama fraudulent transfer and conspiracy claims.  SEPH alleged that from 2009 to 2014, Gaddy transferred property to his family and others with knowledge of the potential default of Water's Edge.  SEPH alleged the following fraudulent transfers:

- On October 16, 2009, after Vision Bank warned Water's Edge that it would take legal action to enforce any potential default, Gaddy transferred two parcels of land to Rembert, LLC (a company that Gaddy formed approximately two weeks later) for $100.
- On November 2, 2009, Gaddy transferred a 46% interest in his company—Gaddy Electric & Plumbing, LLC—to his wife.  As a result, Gaddy's wife owned a controlling share of 51% in the business.
- On November 20, 2009, Gaddy transferred three parcels of land to his wife.

3

- On October 4, 2010, one week after Vision Bank/SEPH sued Water's Edge and its guarantors, Gaddy transferred a parcel of land to his daughter.
- On April 18, 2012, while the Water's Edge litigation was pending, Gaddy transferred two parcels of land to SLG Properties, LLC (a company that Gaddy's wife formed two months prior) for "good and valuable consideration."
- On December 15, 2014, days before SEPH obtained the state court judgment against Gaddy, Gaddy transferred a 41% interest in his company—Gaddy Electric—to his wife.
- On December 23, 2014, days after SEPH obtained the state court judgment, Gaddy transferred approximately $294,000 to Gaddy Electric.
- On an unknown date, Gaddy transferred his entire interest in Rembert, LLC to his daughter.

The defendants requested a jury trial. The parties then conducted some discovery in the initial stages of the litigation. SEPH subpoenaed several banks, received appraisals and valuations for some of the properties at issue, and received some responses to interrogatories and requests for production. On April 26, 2017, Gaddy filed for Chapter 7 bankruptcy, which stayed the pending litigation.[1] And after the bankruptcy court appointed Terrie Owens as the Chapter 7 Trustee, the Trustee became the party-in-interest in the stayed litigation.

On May 9, 2019, the Trustee and Gaddy filed a joint motion in the bankruptcy court to approve a compromise, which sought to release the fraudulent

---

[1] When a debtor voluntarily petitions for bankruptcy, that petition triggers an automatic stay that protects a debtor "against actions to enforce, collect, assess or recover claims against the debtor or against property of the estate." *United States v. White*, 466 F.3d 1241, 1244 (11th Cir. 2006) (citing 11 U.S.C. § 362(a)); *In re Feingold*, 730 F.3d 1268, 1276 (11th Cir. 2013) (recognizing that § 362(a) applies in Chapter 7 proceedings).

4

transfer claims against the estate in federal district court for $375,000. Union State Bank ("USB")—the only other creditor of the bankruptcy estate besides SEPH—supported the compromise.[2] SEPH, however, opposed the compromise and offered to pay the Trustee $400,000 to pursue the fraudulent transfer claims on its behalf. In light of SEPH's offer, the bankruptcy court denied the joint motion to compromise. It then ordered the parties to mediate the fraudulent transfer claims, but the parties ultimately could not reach an agreement.

On November 15, 2019, the Trustee and Gaddy filed a second joint motion to approve a new compromise, which would release the fraudulent transfer claims against the estate for a "premium" of $825,000. USB supported the compromise. SEPH, however, again objected to the proposed compromise. SEPH argued that it had a "high probability of success on the merits of the [fraudulent transfer] claims" in the district court proceeding. SEPH further contended that more discovery was necessary to evaluate the Trustee's proposed compromise. Additionally, SEPH filed a motion to approve its pursuit of the fraudulent transfer claims in the district court on behalf of the estate. SEPH supported its motion with a declaration from its vice president that "guarantee[d] a minimum [recovery] of $825,000 to the Estate."

---

[2] SEPH filed a claim against the estate for approximately $2.5 million; USB filed a claim for approximately $1.87 million.

The bankruptcy court held an eight-hour evidentiary hearing on the second motion to approve a compromise. The Trustee, Gaddy, and SEPH's vice president testified at the hearing. The bankruptcy court later issued an order approving the compromise. Applying the factors set forth in *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544 (11th Cir. 1990), the bankruptcy court found that the compromise was fair and reasonable.

SEPH appealed the bankruptcy court's order to the district court. The district court affirmed the bankruptcy court. SEPH timely appealed to this court.

## II.    Standard of Review

When reviewing a decision of the bankruptcy court, we "sit[] as a second court of review and . . . examine[] independently the factual and legal determinations of the bankruptcy court and employ[] the same standards of review as the district court." *In re Daughtrey*, 896 F.3d 1255, 1273 (11th Cir. 2018) (quotation omitted). Thus, we review the bankruptcy court's legal conclusions *de novo* and its factual findings for clear error. *In re Cox*, 338 F.3d 1238, 1241 (11th Cir. 2003) (per curiam). "A factual finding is not clearly erroneous unless, after reviewing all of the evidence, we are left with 'a definite and firm conviction that a mistake has been committed.'" *In re Daughtrey*, 896 F.3d at 1273 (quotation omitted).

We review the bankruptcy court's approval of a compromise for abuse of discretion. *Id*. at 1273. "A bankruptcy court abuses its discretion when it either misapplies the law or bases its decision on factual findings that are clearly erroneous." *Id.* at 1274.

## III.    Discussion

SEPH argues that the bankruptcy court abused its discretion in approving the compromise for three reasons. First, SEPH contends that the bankruptcy court misapplied the *Justice Oaks* factors. Second, SEPH maintains that the Trustee did not diligently investigate the case and, thus, the bankruptcy court approved the compromise without being fully informed of the facts. Third, and relatedly, SEPH argues that the bankruptcy court should not have approved the compromise without permitting SEPH to take discovery related to the proposed compromise. SEPH's arguments are without merit.

A.    The bankruptcy court did not abuse its discretion in approving the compromise.

First, we consider the bankruptcy court's application of the *Justice Oaks* factors. The bankruptcy court may approve a compromise "[o]n motion by the trustee and after notice and a hearing." Fed. R. Bankr. P. 9019(a). In *Justice Oaks*, we explained that a bankruptcy court evaluating a proposed compromise must consider:

(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

898 F.2d at 1549 (quotation omitted).  Under these factors, the bankruptcy court is tasked with determining "the fairness, reasonableness[,] and adequacy of a proposed settlement agreement."  *Chira v. Saal (In re Chira)*, 567 F.3d 1307, 1312–13 (11th Cir. 2009) (quotation omitted).  Our review of a bankruptcy court's application of the *Justice Oaks* factors is quite limited.  We will reverse only when the bankruptcy court approved a compromise that fell "below the lowest point in the range of reasonableness."  *Martin v. Pahiakos (In re Martin)*, 490 F.3d 1272, 1275 (11th Cir. 2007).

Here, the bankruptcy court carefully considered the *Justice Oaks* factors. The bankruptcy court considered the probability of success of each of the fraudulent transfer claims in detail.  The bankruptcy outlined applicable Alabama law, addressed each individual claim and relevant defenses (like the statute of limitations), and estimated an amount likely to be recovered in each case.  The bankruptcy court then concluded that the proposed compromise amount of $825,000 likely exceeded any potential recovery that SEPH could win if it litigated the fraudulent transfer claims.

8

The bankruptcy court also found that the difficulty for the Trustee in collecting was "irrelevant or neutral because collection difficulties for the [T]rustee related to the settlement amount are not at issue." Nevertheless, the bankruptcy court did consider the difficulty in collection when it evaluated the probability of success of the litigation.

The bankruptcy court carefully considered the complexity of the litigation, its expense, and the inconvenience and delay associated with litigating the fraudulent transfer claims. The bankruptcy court considered numerous factors, including: (1) that the Trustee was an experienced bankruptcy lawyer who had evaluated "hundreds of fraudulent transfer claims" in her capacity as a Chapter 7 trustee since 2012; (2) that the Trustee examined the record in the district court case, engaged in informal discovery with the debtors, and hired another experienced bankruptcy lawyer to assist her evaluation of the case; (3) that litigating the fraudulent transfer claims would delay closing the estate for several more years because the litigation would require extensive discovery and fraud claims are rarely decided at the summary judgment stage (thus necessitating a trial); and (4) that such litigation would be costly to the estate. The bankruptcy court concluded that these factors weighed in favor of the compromise.

And the bankruptcy court considered the paramount interest of the creditors and gave proper deference to their reasonable views. Although the bankruptcy

court noted that it owed some deference to the reasonable views of SEPH as the majority creditor, the bankruptcy court rejected any suggestion that SEPH was entitled to veto the compromise. Addressing one of SEPH's objections, the bankruptcy court explained that the Trustee was not required to include SEPH in settlement negotiations after the parties participated in court-ordered mediation. The bankruptcy court also found that SEPH's guarantee that it would recover at least $825,000 for the estate was insufficient to void a compromise for the same amount given that litigation would likely delay the resolution of the estate by several years. The bankruptcy court was also concerned that SEPH would put its interests above the estate's interests and that SEPH's offer undermined the Trustee's ability to object to SEPH's proof of claim, if warranted.

SEPH argues that the bankruptcy court clearly erred in its application of the *Justice Oaks* factors. SEPH's arguments are meritless.

According to SEPH, there was a high probability of success in the litigation because the property transfers were marked by "multiple badges of fraud,"[3] and

---

[3] Alabama law recognizes a non-exhaustive list of factors to support a finding of actual fraud:

(1) The transfer was to an insider; (2) The debtor retained possession or control of the property transferred after the transfer; (3) The transfer was disclosed or concealed; (4) Before the transfer was made the debtor had been sued or threatened with suit; (5) The transfer was of substantially all the debtor's assets; (6) The debtor absconded; (7) The debtor removed or concealed assets; (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred; (9) The debtor was insolvent or became insolvent shortly after the transfer was made; (10) The transfer occurred shortly before or

10

statute of limitation defenses would not be available to the defendants because

Alabama law recognizes the discovery rule in fraudulent transfer cases. But as the

bankruptcy court acknowledged, proving actual or constructive fraud under

Alabama law is rarely an open-and-shut case. Further, the bankruptcy court noted

that most of the transfers were recorded at the time the transfers were made, which

means that—even with the benefit of the discovery rule—several of SEPH's claims

may have been brought too late. The bankruptcy court was not required "to *decide*

the merits of those claims—only the *probability* of succeeding on those claims."

*Justice Oaks*, 898 F.2d at 1549. And the bankruptcy court cogently explained why

the probability of success factor favored the compromise. The fact that the

bankruptcy court did not share SEPH's optimism is not clear error.

Next, SEPH argues that the difficulties of collection factor weighed against

the compromise because collection would have yielded substantial returns for the

estate. SEPH contends that the bankruptcy court clearly erred by relying on

Gaddy's testimony about the future of his business, deferring to the Trustee's

judgment about the liquidation value of Gaddy's properties, and failing to evaluate

the current value of the properties—rather than the value at the time of transfer.

---

shortly after a substantial debt was incurred; and (11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*Dionne v. Keating (In re XYZ Options, Inc.)*, 154 F.3d 1262, 1272 (11th Cir. 1998) (quoting Ala. Code § 8-9A-4(b)).

11

We disagree. In its analysis of the probability of success, the bankruptcy court estimated the amount that SEPH would recover on each fraudulent transfer claim. That analysis considered obstacles to collection, such as mortgages, resale value of real property, and liquidation of Gaddy Electric's assets. Ultimately, the bankruptcy court concluded that "the proposed settlement exceeds the likely net recovery to the estate . . . if successful at trial." SEPH's optimism about collecting on a judgment is speculation. And the risk associated with litigation is precisely why the bankruptcy court found that a firm compromise was likely to yield more than a potential judgment award. The bankruptcy court was not required to predict the future; it was required to identify potential difficulties in collection. The bankruptcy court fulfilled that obligation. Even if it had not, that shortcoming would not be an impediment to affirming the bankruptcy court. *See Chira*, 567 F.3d at 1313 (affirming the approval of a compromise when the bankruptcy court did not consider the difficulty of collection or the complexity of the litigation involved "in any meaningful way").[4]

---

[4] SEPH also argues that the bankruptcy court was wrong to say that this factor "is irrelevant because collection difficulties for the trustee related to the settlement amount are not at issue." SEPH submits that this factor goes the difficulty of collecting on any judgments obtained in the litigation and not difficulties the Trustee might encounter in trying to collect on the compromise. We agree with SEPH's articulation of the law. But as we have noted, and SEPH concedes, the bankruptcy court "did separately analyze the various claims and the Trustee's assertions regarding the amount that could be collected in the event a judgment was obtained."

Next, SEPH argues that the bankruptcy court clearly erred in its finding that the complexity, expense, and delay of litigation favored the compromise. SEPH contends that its guarantee of an $825,000 recovery eliminated concerns about litigation expense and should have outweighed the interest in resolving the estate in a timely manner. Again, we disagree. SEPH's offer was conditioned on allowing SEPH's proof of claim notwithstanding any objection and SEPH noted that it would seek administrative fees and expenses for any recovery over $825,000. For those reasons, the bankruptcy court was reasonably concerned that "SEPH would not necessarily put the interests of the estate above its own interests" and would "usurp[] the trustee's ability and duty to object to [SEPH's] claim if warranted." Those concerns, coupled with "the possibility of costly and protracted litigation . . . supports the bankruptcy court's decision to approve the settlement agreement."[5] *Chira*, 567 F.3d at 1313.

Finally, SEPH contends that the bankruptcy court clearly erred when it approved the compromise over the paramount interest of the creditors and SEPH's reasonable view as a creditor. SEPH candidly acknowledges that it did not possess

---

[5] SEPH also maintains that the Trustee bears responsibility for some of the delay in resolving the estate for her failure to intervene in the district court case for approximately two years. We fail to see why any purported delay in intervening in a case subject to the automatic stay provision of the Bankruptcy Code is relevant to the bankruptcy court's concern about costly and protracted litigation. Tellingly, SEPH does not suggest that the Trustee delayed her administration of the estate after Gaddy filed for bankruptcy.

13

a veto right over the proposed compromise.  Rather, SEPH argues that its offer to fund the district court litigation "should have carried more weight" because its position was "completely reasonable."  That argument fails for numerous reasons. First, USB—which also held a substantial claim against the estate—supported the compromise.  Thus, the bankruptcy court owed deference to the reasonable views of USB, as well.  Second, for the reasons explained, SEPH's offer was not as reasonable as it suggests.  SEPH's offer simply matched the amount Gaddy agreed to pay, but it was conditioned on (potentially years of) delay and blocked the Trustee's ability to object to SEPH's proof of claim.  Third, we do not see much daylight between a "veto" right and SEPH's suggestion that its offer should have defeated the compromise.  The bottom line is that SEPH's assertion that it offered a reasonable plan is insufficient to show that the bankruptcy court's evaluation of the creditors' interests in this case was any less reasonable.  Thus, SEPH fails to show that the bankruptcy court clearly erred.

In short, SEPH has failed to demonstrate that the bankruptcy court committed clear error when it applied the *Justice Oaks* factors.  Accordingly, the bankruptcy court did not abuse its discretion in approving the compromise because the compromise did not fall "below the lowest point in the range of reasonableness."  *Martin*, 490 F.3d at 1275.

      B.      The bankruptcy court did not abuse its discretion in denying SEPH additional discovery.

14

Alternatively, SEPH argues that the district court abused its discretion by denying SEPH's request for more discovery before it accepted the compromise. We disagree.

First, SEPH maintains that the bankruptcy court abused its discretion by relying on the Trustee's business judgment because the Trustee failed to investigate the case diligently before proposing the second compromise. SEPH contends that the Trustee accepted self-serving statements from Gaddy's counsel and relied on public tax records rather than requesting independent appraisals of all properties at issue.

SEPH neglects to mention the extent of the demands it made on the Trustee and the representations it made to the bankruptcy court. In short, SEPH essentially requested full discovery, as if it were litigating the district court case. The bankruptcy court correctly noted, full discovery would defeat the purpose of a compromise because, after full discovery, "the parties might as well go ahead and try the case." Before accepting the compromise, the bankruptcy court was required to assess "the fairness, reasonableness[,] and adequacy of [the] proposed settlement agreement." *Chira*, 567 F.3d at 1312–13 (quotation omitted). It was not required to order full discovery on the merits. Thus, the bankruptcy court did not abuse its discretion in declining to order full discovery when the Trustee was an experienced bankruptcy lawyer who had evaluated "hundreds of fraudulent transfer claims" in

15

her capacity as a Chapter 7 trustee.  Moreover, the Trustee examined the record in the district court case, engaged in informal discovery with the debtors, and hired another experienced bankruptcy lawyer to assist in her evaluation of the case. Nothing in Rule 9019(a) or *Justice Oaks* suggests that the bankruptcy court must order the Trustee or debtor to submit to full discovery so that a creditor can be assured of the reasonableness of the proposed compromise.  SEPH has already conceded that it lacks a veto right over the proposed compromise.

Second, SEPH argues that the bankruptcy court abused its discretion by denying SEPH's request for discovery under Rule 9014.  Rule 9014 provides that "[i]n a contested matter . . . relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought."  Fed. R. Bankr. P. 9014(a).  It also provides that "[t]estimony of witnesses with respect to disputed material factual issues shall be taken in the same manner as testimony in an adversary proceeding."  Fed. R. Bankr. P. 9014(d). SEPH's argument has several flaws.  The most obvious problem with SEPH's argument is that the bankruptcy court held an eight-hour evidentiary hearing in which dozens of exhibits were entered into the record.  SEPH's argument also misapprehends the bankruptcy court's role in evaluating a proposed compromise. "[T]he role of the bankruptcy judge is not to decide the numerous questions of law and fact raised by appellants but rather to canvass the issue and see whether the

16

settlement falls below the lowest point in the range of reasonableness." *Pullum v. SE Prop. Holdings, LLC (In re Pullum)*, 598 B.R. 489, 492 (Bankr. N.D. Fla. 2019) (quoting *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (cleaned up)).  Finally, we generally "turn a deaf ear to protests that an evidentiary hearing should have been convened but was not" when "the protestor did not seasonably request such a hearing in lower court." *Sunseri v. Macro Cellular Partners*, 412 F.3d 1247, 1250 (11th Cir. 2005) (quoting *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1120 (1st Cir. 1989)).  SEPH is an experienced bankruptcy creditor and knew that as soon as the bankruptcy proceeding commenced, it was entitled to seek discovery from the debtors under Rule 2004.[6] But SEPH waited over two years—from the filing of the bankruptcy petition until the first proposed compromise—to seek any discovery.  In short, SEPH has failed to demonstrate that the bankruptcy court abused its discretion.

*       *       *

For these reasons, we affirm.

**AFFIRMED.**

---

[6] Rule 2004 provides that "[o]n motion of any party in interest, the [bankruptcy] court may order the examination of any entity."  Fed. R. Bankr. P. 2004(a); *see also In re Duratech Indus., Inc.*, 241 B.R. 283, 289 (E.D.N.Y. 1999) ("The scope of a Rule 2004 examination is exceptionally broad and . . . [e]xaminations under Rule 2004 are allowed for the purpose of discovering assets and unearthing frauds and have been compared to a fishing expedition." (citation and quotation marks omitted)).