[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-12295

_____

In re: MICHAEL WILLIAM KENNY,

Debtor.

_____

MICHAEL WILLIAM KENNY,

Plaintiff-Appellant,

*versus*

CRITICAL INTERVENTION SERVICES, INC.,

Defendant-Appellee.

———————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:20-cv-02458-KKM

———————————

Before WILLIAM PRYOR, Chief Judge, ROSENBAUM, and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

This is an appeal from a settlement approval order in a Chapter 7 bankruptcy proceeding. When Michael Kenny was hired by Critical Intervention Services, Inc. ("CIS"), as a security guard, he signed several restrictive covenants with the firm, including a non-compete agreement. After less than a month on the job, Kenny resigned and joined another private security firm called Securitas. When CIS notified Securitas of the non-compete agreement it had with Kenny, Securitas terminated him. At that point, Kenny challenged CIS's enforcement of the non-compete agreement in state court. CIS countersued for breach of contract. While that litigation was ongoing, Kenny filed a Chapter 7 bankruptcy petition.

A trustee administered Kenny's estate in bankruptcy court. Several of Kenny's creditors, including CIS, filed claims on his estate. The Trustee eventually proposed a settlement in which CIS paid $30,000 into Kenny's estate in exchange for dismissing the state-court action. That money would then be used to pay Kenny's

other unsecured creditors in full. Any leftover funds would be divided between Kenny and CIS. The bankruptcy court approved the settlement over Kenny's objection. Kenny filed a motion for reconsideration, which the bankruptcy court denied. He then appealed to the United States District Court for the Middle District of Florida, which affirmed the approval of the settlement. He then filed a secondary appeal with this Court. Reviewing for abuse of discretion, we affirm.

## I.    BACKGROUND

CIS hired Kenny as a security guard under a non-compete agreement. Kenny was initially assigned to work the night shift, but after losing childcare for his daughter, he asked CIS if he could move to the day shift. CIS could not accommodate his request, so he resigned. Kenny's time at CIS lasted less than one month. Most of Kenny's time at CIS was spent in state licensure courses, orientation, and job-training. Three days were spent working field-training shifts.

After leaving CIS, Kenny began working for Securitas, a CIS competitor, as a security guard. CIS considered Kenny's employment with Securitas a violation of his non-compete agreement, which prohibited Kenny from working for a CIS competitor for two years after his employment with CIS ended. After learning about Kenny's new position, CIS notified Securitas that Kenny was in breach of the non-compete agreement. Securitas then terminated Kenny.

Kenny sued CIS in Florida state court seeking (1) a declaratory judgment that the non-compete he signed with CIS was unenforceable, and (2) money damages based on tortious interference leading to his termination by Securitas. Because the harm caused by his termination was offset by unemployment benefits he received, Kenny's economic damages were capped at $10,000 in lost wages. He also sought non-economic damages for emotional distress and punitive damages. CIS counterclaimed for breach of contract, seeking liquidated damages and injunctive relief based on the non-compete agreement. CIS later moved to disqualify Kenny's counsel.

Before the state court could rule on that motion, and as part of his strategy, Kenny filed a petition for Chapter 7 bankruptcy. Kenny's petition listed $333,898 in total liabilities, mostly in the form of non-priority, unsecured claims. His only meaningful assets were his claims against CIS. Kenny listed CIS as a nonpriority, unsecured creditor with a contingent and disputed claim stemming from the state-court litigation. CIS filed a proof of claim for $302,305.26 based on "[a]ttorney's fees and costs incurred" in the state-court litigation with Kenny. Kenny filed an objection to the proof of claim. According to Kenny, CIS's proof of claim was meritless because CIS could not prevail in the state-court action against Kenny.

While Kenny's objection was pending, the bankruptcy Trustee negotiated a settlement agreement with CIS. Under the settlement, CIS agreed to pay Kenny's estate $30,000 in exchange for

dismissing the state-court action with prejudice. CIS would receive an allowed claim for $302,305.26—though it was to be subordinated to all other unsecured claims. And CIS would assign thirty-three percent of any funds it received for its claim (up to $10,000) to Kenny. The upshot is that all of Kenny's unsecured debts would be paid, and Kenny would receive a discharge of his debts and up to $10,000 cash.

The Trustee asked the bankruptcy court to approve the settlement under 11 U.S.C. § 105(a) and Federal Rule of Bankruptcy Procedure 9019(a). No creditor objected to the proposal, but Kenny objected, arguing that settlement was not in his best interests. Specifically, Kenny argued that the settlement undervalued his claims in the state-court action where he was seeking non-economic and punitive damages. He also argued that CIS was not a legitimate creditor and had no legal basis for recovery against Kenny or the estate.

The bankruptcy court held a hearing on the proposed settlement. The court analyzed the proposed settlement under the test laid out by *Wallis v. Justice Oaks II, Ltd.* (*In re Justice Oaks II, Ltd.*), 898 F.2d 1544 (11th Cir. 1990), concluding that "each of the [four] *Justice Oaks* factors weigh[ed] in favor of approving the compromise." First, it found that Kenny's probability of success on the merits of his state-court claims was doubtful. Though Kenny raised several arguments against enforcing the non-compete agreement, he overlooked the fact that CIS had successfully enforced similar agreements twice in the six years leading up to the settlement. And

even if Kenny prevailed, his economic damages against CIS were capped at $10,000—significantly less than what the settlement promised to pay into his estate—and his entitlement to non-economic damages was uncertain. Second, potential difficulties in collection meant that even if he won on the merits *and* obtained non-economic damages, there could be delay in collecting from CIS. Third, the state-court litigation was complex given the nature of the claims, the pending motion to disqualify Kenny's counsel, and the difficulty of retaining replacement counsel if the motion were granted. Indeed, Kenny's counsel argued that he was uniquely qualified to handle the non-compete litigation and could not be replaced if the state court disqualified him. Finally, the interest of Kenny's creditors weighed heavily in favor of the settlement, under which all non-CIS creditors expected to be paid in full.

The bankruptcy court then approved the settlement. In doing so it concluded that Kenny's initial objection to CIS's proof of claim was "subsumed in the settlement" and therefore overruled. Kenny filed a motion for reconsideration, which the bankruptcy court denied.

Kenny then appealed to the U.S. District Court for the Middle District of Florida. He argued that because he was likely to succeed on the merits of his state-law claims, the bankruptcy court should have recognized that CIS's claim was meritless and removed CIS as a creditor. And he argued that the bankruptcy court erred in denying his motion for reconsideration because, again, it underestimated the strength of his state-law claims, which biased

its weighing of the *Justice Oaks* factors. After reviewing the record and holding its own hearing, the district court affirmed the bankruptcy court's approval order. It held that the bankruptcy court did not abuse its discretion by (1) approving the Trustee's settlement with CIS, (2) overruling Kenny's objection to CIS's proof of claim, and (3) denying Kenny's motion for reconsideration. Kenny then filed a secondary appeal with this Court.

## II.    STANDARDS OF REVIEW

When reviewing a district court's appellate review of a bankruptcy court's decision, we apply the same standards of review as the district court. *See Reynolds v. Servisfirst Bank* (*In re Stanford*), 17 F.4th 116, 121 (11th Cir. 2021) (citing *United Mine Workers of Am. Combined Benefit Fund v. Toffel* (*In re Walter Energy, Inc.*), 911 F.3d 1121, 1135 (11th Cir. 2018)). Accordingly, we review conclusions of law drawn by both the district court and the bankruptcy court *de novo*. And we review factual findings for clear error. *See id.* A factual finding is clearly erroneous if the reviewing court examines the evidence and is "left with the definite and firm conviction that a mistake has been made." *Id.* (quoting *Feshbach v. Dep't of Treasury* (*In re Feshbach*), 974 F.3d 1320, 1328 (11th Cir. 2020)).

We review a bankruptcy court's order approving a settlement for abuse of discretion. *See Chira v. Saal* (*In re Chira*), 567 F.3d 1307, 1311 (11th Cir. 2009) (citing *Christo v. Padgett* (*In re Christo*), 223 F.3d 1324, 1335 (11th Cir. 2000)). Under this standard, we "must affirm unless we find that the lower court has made a

clear error of judgment, or has applied the wrong legal standard." *In re Walker*, 532 F.3d 1304, 1308 (11th Cir. 2008) (per curiam) (cleaned up). Finally, we review a bankruptcy court's denial of a motion for reconsideration for abuse of discretion. *See* Fed. R. Bankr. P. 9024 (incorporating Fed. R. Civ. P. 60(b)); *Big Top Koolers, Inc. v. Circus–Man Snacks, Inc.*, 528 F.3d 839, 842 (11th Cir. 2008) (holding that we "review the district court's denial of a Rule 60(b) motion for an abuse of discretion").

## III.    DISCUSSION

### A.    *The Bankruptcy Court Did Not Abuse its Discretion in Approving the Trustee's Settlement Proposal*

The main issue on appeal is whether the bankruptcy court abused its discretion by approving the proposed settlement. Under Federal Rule of Bankruptcy Procedure 9019, a bankruptcy court may approve a settlement of controversies "[o]n motion by the trustee and after notice and a hearing." Fed. R. Bankr. P. 9019(a). We have recognized a strong public policy in favor of settlements. *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960). Nonetheless, before approving a settlement, a bankruptcy court must determine that the settlement does not "fall below the lowest point in the range of reasonableness." *Martin v. Pahiakos* (*In re Martin*), 490 F.3d 1272, 1275 (11th Cir. 2007).

The bankruptcy court here considered four factors in evaluating the reasonableness of the proposed settlement: "(a) [t]he probability of success in the litigation; (b) the difficulties, if any, to

be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *In re Justice Oaks II, Ltd.*, 898 F.2d at 1549 (quoting *Martin v. Kane* (*In re A & C Props.*), 784 F.2d 1377, 1381 (9th Cir. 1986)). The bankruptcy court found that all four *Justice Oaks* factors favored approving the settlement.

First, the bankruptcy court found that Kenny's probability of success in state court favored settlement. To enforce its non-compete agreement, CIS must show that the agreement is justified by a "legitimate business interest." *See* Fla. Stat. § 542.335(b). Section 542.335(b) provides a non-exhaustive list of such interests, including protection of confidential information, substantial customer relationships, or an extraordinary investment in the employee's education or training. *Id.* Beyond what is enumerated in the statute, a legitimate business interest is "a business asset that, if misappropriated, would give its new owner an unfair competitive advantage over its former owner." *White v. Mederi Caretenders Visiting Servs. of Se. Fla., LLC*, 226 So. 3d 774, 784–85 (Fla. 2017) (quoting John A. Grant, Jr. & Thomas T. Steele, *Restrictive Covenants: Florida Returns to the Original "Unfair Competition" Approach for the 21st Century*, 70 Fla. B.J. 53, 54 (Nov. 1996)).

Kenny argues that he is likely to succeed in state court because CIS's non-compete agreement is unenforceable. He contends that CIS lacks a legitimate business interest in enforcing the

agreement against a security guard who earned slightly more than minimum wage, worked at CIS for less than a month, and spent most of his time with CIS in licensure courses, training, and orientation. He also contends that CIS lacks an interest in keeping its training materials confidential because a significant amount of CIS training material is publicly available either in print or online. Furthermore, if Kenny is correct that CIS cannot tie its non-compete agreement to a legitimate business interest, then it cannot prevail in its counter-claim against Kenny—the sole basis for CIS's claim on Kenny's estate.

Though it acknowledged that Kenny raised "a number of arguments that call into question the enforceability of the non-compete," the bankruptcy court identified several considerations that cast doubt on Kenny's likelihood of success in the litigation. First, the bankruptcy court considered CIS's successful enforcement of two similar non-competes against past employees in state court. Kenny contends that CIS's past success in enforcing its non-compete agreements came *via* consent orders and that the merits of those disputes were not fully litigated. The bankruptcy court acknowledged that fact, but still found it noteworthy that state courts had enforced CIS's non-compete agreements at least twice. Second, the bankruptcy court considered that even if Kenny prevailed in state court, his economic damages were capped at $10,000—significantly less than what his estate received under the settlement. Third, though CIS's claim on the estate totaled more than $300,000, that figure was immaterial because (1) CIS's claim

was subordinated to the claims of all other creditors and (2) CIS funded the settlement by paying $30,000 into the estate to satisfy Kenny's debts, splitting any remainder with up to $10,000 going to Kenny. Finally, the bankruptcy court noted Kenny's inability to support, with relevant authority, his argument that he was entitled to additional non-economic damages.

Second, the bankruptcy court found that the difficulties in collection favored settlement. Kenny argues that there are no known difficulties with collecting a judgment from CIS. He contends that collecting any judgment always involves some amount of delay, and that the efficiency gained by settling his claims does not outweigh the potential benefits of allowing him to litigate. The bankruptcy court considered that even if Kenny prevailed *and* recovered non-economic damages from CIS, collecting them would necessarily take longer than the quick payout to creditors under the settlement. It reasonably concluded that an immediate payout to Kenny's estate and a discharge of his debts outweighed the possibility of collecting a larger judgment sometime in the future.

Third, the bankruptcy court found that the complexity of the litigation favored settlement. Kenny argues that discovery in the state-court litigation was nearly complete and that the case was ready for trial. And he contends that the pending motion to disqualify his counsel should be disregarded as a "delay tactic." The bankruptcy court considered that non-compete litigation is "highly specialized." It reasoned that if the Trustee declined to settle, he would need to defend against the motion to disqualify Kenny's counsel.

And it relied on Kenny's own statement that his current counsel was the only lawyer who could adequately represent him, concluding that finding replacement counsel would be difficult if the motion to disqualify were granted.

Finally, the bankruptcy court considered the interests of Kenny's creditors. No creditor objected to the proposed settlement, and the $30,000 in settlement proceeds was expected to be enough to cover administrative expenses and to pay every unsecured creditor other than CIS in full.

We cannot say the bankruptcy court abused its discretion in concluding that the *Justice Oaks* factors favor settlement. The proposed settlement paid Kenny more than he could have recovered in economic damages from the litigation, which were capped at $10,000. And it paid in full each unsecured creditor other than CIS. Rather than guarantee his creditors a quick payout, Kenny asks for an opportunity to fully litigate his state-court claims in search of non-economic damages. The bankruptcy court reasonably rejected that request.

Kenny complains that the bankruptcy court, in weighing the factors, did not itself fully adjudicate the merits of his state-law claims. But it was not required to. In evaluating a settlement proposal, a bankruptcy court need not find facts, draw legal conclusions, or otherwise adjudicate the merits of underlying litigation. *See In re Justice Oaks II, Ltd.*, 898 F.2d at 1549. The nature of a settlement is that no court rules on the merits of the settled claims. Because the trustee's proposed settlement was well above the

"lowest point in the range of reasonableness," the bankruptcy court did not abuse its discretion in approving it. *See In re Martin*, 490 F.3d at 1275.

B.      *The Bankruptcy Court Did Not Abuse its Discretion in Allowing CIS's Claim*

Kenny argues that the bankruptcy court erred in overruling his objection to CIS's proof of claim. He contends that, if the court had ruled on his objection before approving the settlement, it would have concluded that CIS's state-court claim lacked merit, disqualifying CIS as a creditor and altering the *Justice Oaks* analysis in his favor. He contends that if the bankruptcy court had ruled separately on his objection to CIS's claim, that would have rendered him "the prevailing party on his claim for declaratory judgment [in state court] . . . and entitle him (and the Estate) to significant fees."

This argument fails. First, nothing requires a bankruptcy court to rule on a proof of claim or an objection to a proof of claim before the claim can be settled. *See Ga. Dep't of Revenue v. Mouzon Enters., Inc.* (*In re Mouzon Enters., Inc.*), 610 F.3d 1329, 1334 (11th Cir. 2010). Such a rule would defeat the purpose of settlement. Second, the bankruptcy court analyzed and overruled Kenny's objection in the process of approving the settlement. The bankruptcy court explained that Kenny's objection to CIS's proof of claim was "subsumed" into its settlement analysis. Because the bankruptcy court did not abuse its discretion in approving the

settlement, it did not abuse its discretion in overruling Kenny's objection under that settlement.

### C.     The Bankruptcy Court Did Not Abuse its Discretion in Denying Kenny's Motion for Reconsideration

Kenny filed a motion for reconsideration of the bankruptcy court's order approving the settlement and overruling his objection to the proof of claim. The bankruptcy court denied Kenny's motion for reconsideration, and the district court affirmed. On appeal, Kenny argues that the bankruptcy court abused its discretion because it relied on two prior instances of CIS successfully enforcing its restrictive covenants against past employees in court. Kenny contends that the orders resolving these cases were stipulated and say nothing about the merits of his own claims against CIS. This argument fails.

Kenny sought reconsideration under Fed. R. Bankr. P. 9024, which borrows standards from Fed. R. Civ. P. 60. Specifically, Kenny sought reconsideration under Rule 60(b)(3), which authorizes relief in the case of fraud, misrepresentation, or misconduct by an opposing party. Fed. R. Civ. P. 60(b)(3). To obtain relief under this provision, a movant must prove by clear and convincing evidence that the opposing party obtained the order through fraud, misrepresentations, or other misconduct. *See Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1309 (11th Cir. 2003).

As evidence of misconduct, Kenny cites the bankruptcy court's reliance on two prior state-court orders enforcing non-

compete agreements between CIS and its former employees. In his motion for reconsideration, Kenny argued that CIS "misrepresented the nature" of the orders "to mislead the [c]ourt" as to Kenny's probability of success in state court. Kenny appears to abandon that argument on appeal, never mentioning any misrepresentation by CIS. In any event, he falls far short of establishing by "clear and convincing evidence" any misconduct by CIS or the Trustee. In fact, CIS provided the bankruptcy court with copies of the orders so that the bankruptcy court could make its own determination of their relevance. Accordingly, the bankruptcy court did not abuse its discretion in denying reconsideration under Rule 60(b)(3).

Alternatively, Kenny sought reconsideration under Rule 60(b)(6), which allows reconsideration of an order for "other reasons justifying relief." Fed. R. Civ. P. 60(b)(6). But Rule 60(b)(6) is an "extraordinary remedy which may be invoked only upon a showing of exceptional circumstances" including "unexpected hardship." *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984) (quotation omitted). Kenny's only argument that he is entitled to relief under this provision is—again—that the bankruptcy court should have adjudicated the merits of his state-court claims and ruled that CIS's non-compete agreement was unenforceable. As we explained above, the bankruptcy court need not make a merits determination before approving a settlement. Kenny also fails to show that his case features "exceptional circumstances" that justify relief under Rule 60(b)(6). Far from it—despite Kenny's uncertainty

of success in state court, the approved settlement awards Kenny a sum greater than the amount of economic damages he could recover if he succeeded in state court.

## IV.    CONCLUSION

For the reasons stated above, we affirm the district court's decision affirming the bankruptcy court's order approving the Trustee's proposed settlement and overruling Kenny's objection to CIS's proof of claim.

**AFFIRMED.**